[Civ. No. 7959. First Appellate District, Division Two.—December 17, 1931.]

DOROTHY DEIBLER, a Minor, etc., Respondent, v. A. F. WRIGHT, Appellant.

J. Hampton Hoge, Myron Harris, W. H. Older and A. Dal Thomson for Appellant.

Ford & Johnson and Fletcher A. Cutler for Respondent.

NOURSE, P. J.—Plaintiff sued through her guardian for damages resulting from an automobile collision. The cause was tried with a jury which returned a verdict in the sum of $7,500. The defendant Wright has appealed upon type-written transcripts.

The collision occurred on February 23, 1930, on the highway running from Oakland through the Livermore Valley. Plaintiff was a child of fourteen years of age. She was riding in a Chrysler car which was driven by her father, and guardian herein, in a westerly direction along a straight stretch of the highway about two and one-half miles west of Livermore. At the same time defendant was traveling easterly along the same highway directly behind a large truck. The Chrysler car was traveling at a speed of about thirty miles per hour. The truck was traveling at a speed of about twenty-five to thirty miles per hour, and the defendant had followed the truck at the same speed for about two miles. The highway was paved for a width of eighteen feet, with a graveled shoulder on each side approximately ten feet wide. The surface of the paved portion was rippled or ''washboardy'', and a slight rain had made it wet and slippery. As the defendant approached the slow-moving truck she passed it going to the left side of the pavement, and as she turned in on her own side of the highway in front of the truck her car skidded so that the rear wheels went completely off the pavement and on to the shoulder on the right-hand side of the highway and her car then skidded to the left so that it was forced directly across the highway and in the path of the car in which plaintiff was riding. Plaintiff's witnesses testified that when the defendant first left her lane of traffic behind the truck her car was at a distance of one hundred feet from the car in which plaintiff was riding. Aside from lowering his speed from thirty to twenty miles per hour the plaintiff's father did nothing to prevent the collision though the skidding of defendant's car was plainly seen by all occupants of the Chrysler. The evidence

is without serious conflict except as to the matter of the speed of the respective cars and the distance between the two at the time the defendant turned out to pass the truck. Disinterested witnesses on the part of the defendant testified that the plaintiff's car was from two hundred to three hundred feet away when the defendant made this turn. Plaintiff's father and others riding with him testified that this distance was not more than one hundred feet. The truck was drawing a trailer and the full length of the truck and trailer was forty-five or fifty feet. The admitted speed of the truck was from twenty to thirty miles per hour, the speed of defendant's car while passing it was from forty to fifty miles per hour. It was, of course, a mathematical impossibility for defendant to turn out and pass this moving truck, reach the right side of the highway in front of the truck, and then pass to the left side again, within the distance described by the plaintiff's witnesses, a distance which was, of course, shortened by the approach of plaintiff's car. The evidence is uncontradicted, however, that she did pass the truck, went out to the right-hand shoulder of the highway and then skidded at right angles to the left-hand side, so that the right front fender of defendant's car was struck by the left front fender of the Chrysler. If the question before us were solely whether the evidence of defendant's negligence sustained the verdict we might be compelled to close our eyes to the physical conditions and accept the jury's judgment as final. Because of the errors occurring during the trial, which will hereafter be noted, and because the evidence taken at a new trial may be different from what we have here it would serve no purpose to say whether in our judgment the evidence of defendant's negligence is sufficient to support the verdict. It is sufficient to point out, as we have done, that it was an extremely close question whether the collision was caused by any act of omission or commission on the part of the defendant, or whether it was the result of inevitable accident, and that, for this reason, the errors complained of become the more prejudicial.

The appellant insists that the verdict is excessive, that it was the result of passion and prejudice on the part of the jury caused by misconduct on the part of the respondent's counsel, and the errors in the instruction given to the jury which permitted the jury to take into consideration in award-

ing damages a pre-existing ailment of the respondent. We are satisfied that for both of these reasons the judgment must be reversed.

The misconduct of counsel for the respondent occurred in his examination of plaintiff's father in rebuttal. Specific objection is made to the following portion of the transcript:

"Mr. Johnson: Q. I will ask you this, Mr. Deibler, during the course of the World War, did you serve as an officer in the United States army?

"Mr. Harris: I object to that as incompetent, irrelevant and immaterial, and assign the asking of it as misconduct and prejudicial error.

"The Court: I don't think it is that, but I am rather inclined to think it is irrelevant.

"Mr. Johnson: I will take a ruling. I am going to try to develop the fact with no idea of trenching upon the court's position.

"The Court: The objection will be sustained.

"Mr. Johnson: Q. Were you Mr. Deibler examined during the course of the World War by physicians of the United States army as a suspected tubercular case?

"Mr. Harris: The same objection, your Honor.

"The Court: The same ruling.

"Mr. Johnson: Q. Were you, Mr. Deibler, sent to any hospital maintained by the United States government for the purpose of further examination in that regard?

"Mr. Harris: The same objection, and the same assignment.

"The Court: The same ruling.

"Mr. Johnson: All right.

"Q. Subsequent to the World War, Mr. Deibler, state whether or not you have continuously been an officer in the United States reserve corps.

"Mr. Harris: The same objection and the same assignment.

"The Court: That will also be sustained.

"Mr. Johnson: Q. Mr. Deibler, have you yearly since the World War been examined physically, particularly for tuberculosis by physicians of the United States government?

"Mr. Harris: The same objection and the same assignment.

"The Court: The objection will be sustained. If these things are true, the people who made these examinations are the proper ones to come here and testify.

"Mr. Johnson: It is certainly proper to show he has been examined.

"The Court: He can't testify as to the result of the examination.

"Mr. Johnson: I didn't ask him any question of that kind.

"The Court: I understand that, but I assume the other would be immaterial unless that phase were developed. If you are going to offer that proof I will permit the question to be answered.

"Mr. Johnson: Q. I will ask you further, Mr. Deibler, have you served continuously since the World War and have you maintained your standing as an officer in the United States reserve corps and have attended their encampments?

"Mr. Harris: The same objection, and the same assignment, particularly in view of Mr. Johnson's clever evasion of answering the question your Honor propounded.

"The Court: Objection sustained.

"Mr. Johnson: That is all.

"Mr. Harris: No questions.

"Mr. Johnson: That is all. Apparently they don't want that information.

"Mr. Harris: I assign that remark of Mr. Johnson's as misconduct and respectfully ask the court to admonish the jury to disregard it.

"Mr. Johnson: I want the assignment. Let us have it.

"The Court: I didn't hear it.

"Mr. Johnson: He said apparently they didn't want to hear about.

"The Court: That may go out."

■ Another objection goes to a portion of counsel's argument to the jury when he said:

"Mr. Johnson: A couple of weeks ago the little girl was harassed for the greater part of an afternoon in the taking of a deposition and was in bed for two weeks afterwards."

Objection was made to this remark on the ground that it was not supported by any evidence. The fact that it was not supported was admitted and although the court admon-

ished the jury to disregard the remarks, the appellant urges that the admonition was insufficient to overcome the injury done. As to this assignment we are satisfied with our reading of the record that the misconduct was deliberate and uncalled for and that the error was not cured by the admonition. (*Mangino* v. *Bonslett*, 109 Cal. App. 205 [292 Pac. 1006].)

As to the first assignment respondent attempts to justify the conduct on the plea that some inference might have been drawn from the cross-examination of one of her witnesses that her father was afflicted with tuberculosis. The only evidence remotely touching on that subject was that brought out in the examination of the family physician wherein the latter testified that from the history of the little girl's case he understood that she had been exposed to tuberculosis in her home; that her father had been afflicted with the disease; and that she had been returned to her home where she might be further exposed. But in view of the expert evidence that she had not been afflicted with the disease since her return to her home the inquiry relating to the prior home conditions had no bearing upon the case. It is apparent that the inquiry was solely for the purpose of enlisting the sympathy of the jurors toward respondent and her father because of his "World War" services. It was unjustified from any standpoint, and the trial court properly sustained objections to the questions asked along that line and for that purpose. Counsel's misconduct, however, was emphasized by his remarks following the court's ruling, "Apparently they don't want that information." As the damages awarded were far in excess of what ordinarily might be expected for an injury such as the little girl suffered, we cannot say that this misconduct did not tend to the prejudice of appellant in that respect.

Appellant complains of the instruction given at the request of the plaintiff, and reading, "If you believe from the evidence that prior to the happening of the accident in question the plaintiff, Dorothy Deibler, a minor, was suffering from some pre-existing physical ailment or impairment, this fact, if it be a fact, would not preclude her recovery of damages for any injuries proximately caused by the accident in question; and in the event that your verdict is in favor of this plaintiff, you may take into consideration, in fixing

the amount of your award of damages, any aggravation to any pre-existing physical ailment or impairment from which the plaintiff may have been suffering proximately caused by the injuries sustained in the accident, as well as the nature, character, and extent of the injuries directly caused by the collision in question.''

The objection to the instruction is that it injected into the case a false issue which was not supported by any direct evidence, and that it left to the jury the question of ''aggravation'' to be determined merely upon conjecture and surmise. The instruction is poorly worded and should not have been given in this form. ■ Our courts have frequently approved the rule that where one is suffering from a disease or ailment at the time the injury complained of was inflicted and *this injury has aggravated the existing ailment* the injured party is entitled to recover for the damage done by the injury in thus hastening the development of or increasing the activity of the disease. (*White* v. *Red Mountain Fruit Co.*, 186 Cal. 335, 343 [199 Pac. 318, 321].) Instructions covering this issue have been approved in *Campbell* v. *Los Angeles Traction Co.*, 137 Cal. 565–567 [70 Pac. 624], *White* v. *Red Mountain Fruit Co., supra,* and *Perry* v. *Porter McLaughlin,* 212 Cal. 1 [297 Pac. 554]. The instructions thus approved tie the issue to a disease or ailment existing at the time of the injury and aggravated by the injury so that *the present condition* of the injured party appears to be a direct result of the injury. The principle involved in the application of this rule is that under section 3283 of the Civil Code damages may be awarded only for the detriment resulting from the injury ''or certain to result in the future''. ■ General damages are said to be the natural and necessary result of the act complained of, and such damages alone may be recovered under a general pleading such as we have here. If damages are sought which are not the necessary consequence of the act complained of, of course they must be specially pleaded. (*Campbell* v. *Los Angeles Traction Co., supra.*) Therefore, where as here the damage is pleaded generally the plaintiff is limited in her recovery to the natural and direct consequences of the wrong and under the evidence before us was entitled to recover for the hastening the development of or increasing the activity of any pre-existing ailment. The instruction approved in

the White case directed the jury to take into consideration whether the said injury hastened the development of the pre-existing disease "and that thereby said plaintiff's condition, *whatever you find that to be,* has resulted from such injury".

█ The expert evidence upon which the issue is based (and that is all that can be considered in a question of this character) was without material conflict that the little girl was *exposed* to tuberculosis or had a *predisposition* to tuberculosis about ten months prior to the accident, and that for seven months of that period had been kept in a home known as "A Preventorium"; that she returned to her home about three months prior to the accident apparently in perfect health except that she was slightly underweight; that as a result of the accident she suffered three fractured ribs which healed in some four or six weeks and caused her no apparent discomfort thereafter; that she was under the care of a physician who examined her frequently during the eleven months intervening between the accident and the time of the trial; that he testified that at the time of the trial her temperature, respiration and pulse were all normal, that she showed no signs of having tuberculosis and no permanent disability as a result of the accident. The same witness testified, in answer to a direct question, that he was unable to say that the predisposition to tuberculosis had been materially affected by the accident but that there was a *possibility* that this injury might tend toward a lower resistance, that is to say, that if she were exposed to the disease in the future she might possibly be less able to resist it because of the injury complained of. Another physician called by the plaintiff testified that he could find no evidence of tubercular trouble, but it was *possible* that the injury might in the future cause the plaintiff to be less resistant to these germs if they should become active. His testimony may be summed up in his concluding statement, reading, "I believe that the injury sustained may possibly be a detriment to her general health. She has been exposed to tuberculosis. Has a typical narrow chest with retracted apices which is characteristic of a tubercular individual. Violence sustained interferes with her general health, and in that way may cause a future attack of tuberculosis." A physician called as a witness by the appellant testified that from his examination he could find no evidence of the pre-existing disease, that

the lungs were fairly clear, heart good, that she had very little complaint to make, that aside from being under weight she was a very healthy child. There is no substantial conflict in the evidence that at the time of the trial the child was not suffering from any pre-existing ailment or that at the time of the trial there was no "aggravation to any pre-existing physical ailment or impairment . . . caused by the injuries". It is true that the witness Pearce, in answer to questions which purported to be hypothetical, gave testimony which tended to support plaintiff's theory, but in each question the facts stated were not in accord with the facts in evidence. Thus in answer to a question whether after an observation of eleven months showing "no improvement in the lung condition, would you say from the injury that has occurred, that there is a greater tendency toward a tubercular condition?" He answered "Yes". Similarly the same witness was asked if the injury was a factor in impeding the recovery of the little child, assuming that she had returned to her home prior to the accident normal in weight. It was undisputed that when she returned to her home her weight was below normal. We cannot escape the conclusion that the peculiar wording of the instruction permitted the jury to enter the field of speculation and to return its verdict on surmise and conjecture, in so far as the injury complained of aggravated any pre-existing ailment of the plaintiff. In view of the fact that the physical injuries suffered at the time of the accident were shown to have been three fractured ribs and a slight cut upon the index finger and that the verdict of seventy-five hundred dollars was far in excess of what might be deemed reasonable for those injuries alone it is not reasonable to say that the error of the instruction complained of did not enter into this verdict.

Other complaints are made as to the refusal of the trial court to give certain instructions. We have read the charges as a whole and are satisfied that the issues were fairly covered and that the matters of which the appellant now complains may be readily avoided on a new trial without further discussion in this opinion.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 16, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 15, 1932.