[S. F. No. 21675.   In Bank.   Aug. 27, 1964.]

SIRANOUSH MALKASIAN, Plaintiff and Respondent, v. RALPH CARLISLE IRWIN, Defendant and Appellant.

McCormick, Barstow, Sheppard, Coyle & Best and William A. Boone for Defendant and Appellant.

James C. Janjigian and Paul Mosesian for Plaintiff and Respondent.

Henry F. Walker as Amicus Curiae.

PETERS, J.—Plaintiff brought this action for the wrongful death of her son. The jury brought in a defense verdict. Plaintiff moved for a new trial. The motion was granted. Defendant appeals, contending that the order granting the new trial cannot be sustained on any of the grounds contained in the motion.

Before directly discussing the new trial proceedings, some reference should be made to the evidence.

The undisputed evidence shows that plaintiff's son was killed in an accident which occurred on Highway 99, some 9 miles north of Fresno. At that point the road consisted of three lanes (southbound, northbound and a center passing lane), each approximately 12 feet wide, and two shoulders, each approximately 10 feet in width. Decedent, alone, was driving southerly (toward Fresno). Defendant, also unaccompanied, was also driving southerly, and his car was behind (or northerly of) decedent. The accident occurred opposite the Mammoth Truck Terminal, a service station and restaurant catering to trucking outfits, located on the westerly, or right-hand side of the highway going south. A large truck-trailer was parked between the gasoline pumps of the station and the road, facing southerly, with its left wheels just within the westerly shoulder of the highway.[1]

It is undisputed that defendant's vehicle collided with the left rear of the decedent's car, and that the latter collided with the parked truck. It was plaintiff's theory that defendant's car crashed into the rear end of the car being driven by decedent and caused the latter to veer to the right and crash into the parked truck-trailer. It was defendant's theory that in some way decedent's car first ran into the truck-trailer, and, as a result, placed itself in a position where defendant's car hit it, and knocked it into the truck-trailer for a second time. Plaintiff's theory of the accident is, of course, supported by the presumption of due care, and also by an analysis of the physical facts.

Except for defendant, and one of his witnesses, there were

---

[1]The owner and driver of that truck were also defendants, but were dismissed from the action on motion for nonsuit. Since no appeal was taken from that order, they are no longer interested parties herein.

no eyewitnesses of the accident. Most of the witnesses did not see the accident but heard it, and arrived shortly after its occurrence. Their testimony was largely based on maps, diagrams and photographs, and on the physical facts.

On the issue of liability, the plaintiff presented three witnesses, certain maps, diagrams and photographs that they identified, and the depositions of defendant and of the driver of the parked truck. None of the three witnesses saw the accident occur. One was the manager of the Mammoth Truck Terminal, and another was an attendant at that station. They were busy at the moment of the collision, and their view was blocked by the parked truck-trailer. They saw neither car until it had come to rest after the accident. Their attention was first attracted by the noise of the collision, the manager testifying that he first heard a minor crash followed almost immediately by a loud crash, the attendant remembering only one crash.

The third witness called by the plaintiff on the issue of liability was the highway patrol officer who arrived at the scene some 16 minutes after the accident occurred. He took pictures of the scene as it then appeared. The driver of the truck-trailer, according to his deposition read into evidence, was standing on the opposite side of his equipment from the approaching vehicles and so could not see the accident.

The plaintiff also read into evidence the deposition of defendant taken before trial. Defendant there stated that about 2:20 p. m. on the day in question, which was clear and dry, he was traveling southerly in the right-hand lane, at a speed of about 45 miles per hour, when he first saw the decedent's car about 130 feet in front of him in the same lane, at or near the parked truck-trailer. He was quite positive that he did not then or before he hit the decedent's car, see the latter come in contact with the truck or trailer. He testified, however, that the rear end of decedent's car appeared to be making a sideways movement from the right to the left. He claimed to have applied his brakes at once, but admittedly made no effort to turn into the middle or passing lane so as to avoid a collision. Almost immediately thereafter, the front end of his car came into violent collision with the left rear end of decedent's vehicle. This caused his car to veer to the left, and it came to rest on the easterly shoulder. The collision, he admitted, took place entirely in the southbound lane. He admitted that he had not seen decedent's car prior to the time described above, and conceded that he did not know from which direction it

had come in order to be in the position where he first saw it. Although there was some other traffic on the highway, he recalled no car passing him in either direction. There was no obstruction to block his view ahead. He was not injured. After the accident, he alighted from his car, and then saw decedent's vehicle facing in a northwesterly direction with its front end against the side of the trailer, its rear end at an angle to the trailer. Almost the entire length of decedent's car was then on the shoulder. It will be noted that if defendant's theory is correct there should have been three crashes, the first, when plaintiff is supposed to have hit the truck-trailer and bounced out onto the highway, the second when defendant's car hit that of decedent, and the third when decedent's car crashed into the truck-trailer. None of the witnesses, produced by either side, heard more than two crashes, which is some support for plaintiff's theory.

The station manager and the attendant testified that, immediately after the accident, defendant stated to them that he did not see decedent's car until just before the impact. The police officer testified that defendant told him that just before the accident he was proceeding at 40 miles per hour.

There was some confusion in the testimony as to the exact position of decedent's car after the accident. One witness recalled that he first saw decedent's car headed into the trailer but facing in a general southerly direction. In this position the car was partly in the southbound lane, thus partially blocking it. The witness testified that several Marines, who had arrived shortly after the accident, moved decedent's car to the position facing northerly, the position in which defendant had testified that he found it after leaving his car. The other witnesses recalled seeing the car facing generally in a northerly direction, and did not recall seeing anyone move it into that position.

The balance of the testimony produced by plaintiff was uncontradicted. It was to the effect that the day was bright and clear, visibility practically unlimited to southbound drivers, that skid marks about 33 feet in length started from a point in the southbound lane to the point where rubble indicated the collision took place and then continued left across the highway to where defendant's car came to rest. There was collision rubble on the shoulder where decedent's car had hit the truck-trailer. The principal damage to the parked trailer was near the rear wheel which was some unspecified distance from the overhanging rear end. The front

of decedent's car was caved in, the left rear fender and bumper were pushed in, and the left rear trunk area was caved in. Defendant's car showed severe damage to the right front end.

Defendant testified on his own behalf, and also presented the testimony of a passenger in a vehicle traveling northerly in the area at the time of the accident. The defendant's testimony was substantially in accord with his deposition. The passenger in the vehicle proceeding northerly testified that his car was going at about 50 miles an hour when the accident occurred; that his car was then about 300 feet south of the point of impact; that he first saw decedent's car alongside the truck-trailer; and that it appeared to be bouncing backward as if it had hit the truck and trailer. On cross-examination he admitted that he did not then see any contact between decedent's car and the trailer, and that he simply assumed such contact had occurred. He testified that almost immediately after he first saw decedent's car, defendant, approaching at about 50 miles per hour, crashed into it, and veered off to the easterly lane, and that this caused decedent's car to spin around and hit the trailer. He was obviously confused as to the physical conditions of the highway at the point of impact, his description being at variance with the photographs and the testimony of all of the other witnesses.

On this evidence the jury brought in a defense verdict. The plaintiff duly and properly moved for a new trial on the grounds of insufficiency of the evidence, that the verdict was against the law, and that the defendant's counsel was guilty of prejudicial misconduct in his argument to the jury. At the conclusion of the argument on the motion, the trial judge stated that the record should show that "this is one of the few cases in the thirteen years that I have been here that I would almost feel compelled to instruct a verdict for the plaintiff," but that he had determined to let the case go to the jury "even though the Court might have a different view than counsel, . . . [and that the verdict was] much to the Court's surprise. . . .

"This is a case where liability should attach, rather clearly and forcefully; and there was a miscarriage of justice." The judge then commented on what he felt were excessive damage demands of plaintiff and opined that "perhaps the exaggerated argument of the damages might have been the reason the jury foreclosed the fact of liability. If counsel would heed the Court's remarks, maybe they can resolve their dif-

ferences. Otherwise, the motion for new trial will be granted.

"The matter will be taken under submission."

On the next court day, the clerk made and entered the following minute order:

"The above-entitled matter heretofore having been heard and submitted to the Court for a ruling and was by the Court, taken under advisement, and the Court now having given due consideration of said matter, and being fully advised in the premises,

"IT IS ORDERED by the Court that plaintiff's motion for new trial be, and it is hereby, granted."

It is obvious that the minute order is not in accord with the court's expressed intent. The judge stated that this was a plaintiff's case, that he probably should have instructed a verdict for the plaintiff, that the court was surprised by the verdict, that a miscarriage of justice had occurred, and that unless the parties settled the case, a new trial would be granted. This is a clear statement that the new trial was to be granted on the ground of insufficiency of the evidence. But when the clerk entered the order he did not specify insufficiency as a ground. The court, within 10 days of the entry of the order did not correct this error. Under such circumstances, under the provisions of section 657 of the Code of Civil Procedure it must be conclusively presumed that the order was not predicated on that ground.

That section reads in part:

"When a new trial is granted, on all or part of the issues, upon the ground of the insufficiency of the evidence to sustain the verdict or decision, the order shall so specify this in writing and shall be filed with the clerk within ten days after the motion is granted; otherwise, on appeal from such order it will be conclusively presumed that the order was not based upon that ground. . . ."

Thus, although the intent of the trial court is clear, the written order did not specify the ground of insufficiency of the evidence. Under the quoted portion of the section the order cannot be sustained on the ground of insufficiency. (*Aced* v. *Hobbs-Sesack Plumbing Co.*, 55 Cal.2d 573, 577-578 [12 Cal.Rptr. 257, 360 P.2d 897].) In many situations, a written order may be modified to correct a clerical error by a proper order *nunc pro tunc* made at any time, and that rule applies to most orders granting or denying a new trial (36 Cal.Jur.2d § 169, p. 381). But that rule does not apply to the failure of the order granting a new trial to specify insuffi-

ciency, even if the error of the clerk in not so specifying, was purely clerical. The provision above quoted requiring an order granting a new trial on the ground of insufficiency to specify this in writing and to be filed with the clerk within 10 days after the motion is granted qualifies the general rules applicable to the correction of clerical errors by a *nunc pro tunc* order. The statute contains, in effect, a 10-day statute of limitations within which the court may act, and after the expiration of 10 days the court has no power to correct the order *nunc pro tunc* or otherwise. (*Cox* v. *Tyrone Power Enterprises,* 49 Cal.App.2d 383, 394 et seq. [121 P.2d 829]; *Thomas* v. *Driscoll,* 42 Cal.App.2d 23, 27 [108 P.2d 43]; *Whitley* v. *Superior Court,* 18 Cal.2d 75, 82 [113 P.2d 449]; 36 Cal.Jur.2d, § 169, p. 383.) Although there are exceptions to the rigid requirements of section 657, set forth in the *Aced* case, *supra,* none of them is here applicable. ■ The present order cannot be sustained on the ground of insufficiency.

■ The fact the order granting the new trial cannot be sustained on that ground is not, however, necessarily fatal to that order. Of course the motion for a new trial is governed and limited by the statutory provisions, and can be granted only on one of the grounds enumerated in section 657 of the Code of Civil Procedure (*Fomco, Inc.* v. *Joe Maggio, Inc.,* 55 Cal.2d 162, 166 [10 Cal.Rptr. 462, 358 P.2d 918]), and can be granted only on a ground specified in the motion. (*Rosenberg* v. *Wittenborn,* 178 Cal.App.2d 846, 848 [3 Cal.Rptr. 459]; *De Felice* v. *Tabor,* 149 Cal.App.2d 273, 274 [308 P.2d 377].) Here three grounds were set forth in the motion, and all three are included within section 657. That being so, if any one of the three grounds specified in the motion is supported by the record, the order granting the new trial may be supported on that ground, whether or not either or both of the other grounds support the order.

■ One of the grounds urged in the motion was that it was error for defendant's counsel to argue before the jury certain facts, set forth in the motion, and not contained in the record. On the argument of the motion the merits of this contention were argued and discussed. Can the order granting a new trial be supported on this ground?

First, what are the facts concerning this allegation? During his argument to the jury, defendant's counsel made the following remarks:

"In my own heart I wonder about the sign that appears

in one picture which says, entrance to a fruit stand, which appears in another picture, orange juice stand. You could speculate that perhaps the boy went in there for orange juice or to park in the large area that appears in the photos to check his tires. I don't know. You might decide that he decided to shoot out on finding the orange juice stand closed, to get up enough speed, that perhaps he was coming out on the highway looking back over his shoulder and never saw the truck. He may have gone to sleep. We don't know whether he worked the mid-watch the night before. You heard me ask his mother. He may have dropped a cigarette, but in my own heart, for reasons we will never know, this boy hit this truck before we hit him.''

There is a lack of any factual background for this statement. It is contrary to the physical facts. There was no testimony that even remotely suggested that decedent entered the highway at the point or in the manner contemplated in the quoted remarks. These statements would have the decedent driving off the highway, and while returning, hitting the truck-trailer in the rear, and then driving or bouncing out into the south lane. There was no damage to the rear of the trailer, only to its side. The uncontradicted evidence was to the effect that at all times observed by any witness prior to and at the time of the accident decedent was traveling south wholly within the southbound lane of the highway. The pretrial statements and order so provide. The defendant and his witness, the only two witnesses who claimed to have seen decedent's car prior to the accident, placed it in the southbound lane, and each admitted that his view was not obstructed. The plaintiff was entitled to the rebuttable presumption that decedent was exercising due care. That presumption was not rebutted. The suggestions contained in the quoted statement that the jury could ''speculate'' that decedent ''decided to shoot out'' on the highway, that he was ''looking back over his shoulder,'' that he ''may have gone to sleep,'' that he may have ''worked the mid-watch the night before,'' or that he ''may have dropped a cigarette,'' are not supported by any evidence, and are contradicted by the physical facts. There was not the slightest factual foundation for any of these speculations, assumptions or inferences.

Counsel for the defendant was not simply arguing that the cause of the accident was unknown. He was arguing that defendant ran into the trailer because of any one of the suggested reasons, and that the jury could speculate as to the one which was in fact true.

There can be no doubt that to argue facts not justified by the record, and to suggest that the jury could speculate, was misconduct. (*Shaff* v. *Baldwin*, 107 Cal.App.2d 81, 86 [236 P.2d 634] ; *Paolini* v. *City & County of San Francisco*, 72 Cal. App.2d 579, 587-588 [164 P.2d 916] ; *Deibler* v. *Wright*, 119 Cal.App. 277, 282-283 [6 P.2d 344].) ■ While a counsel in summing up may indulge in all fair arguments in favor of his client's case, he may not assume facts not in evidence or invite the jury to speculate as to unsupported inferences. Thus the argument was error. Did it justify the granting of the new trial?

■ Defendant argues even if it were error it was waived by plaintiff's failure to object. In some circumstances, failure to object can constitute a waiver. But the rules applicable to such a waiver, to invited error or to estoppel, have no application when an appellate court is considering the propriety of an order granting a new trial. If the trial court had denied the new trial such an error would be considered waived by failure to object. But the trial court has broad discretion in considering motions for a new trial. Here the court had definitely determined that there had been "a miscarriage of justice." The court definitely felt a new trial was required. The trial court's discretion should be upheld even where the error was a minor or debatable one. There is no necessity of showing prejudice in such a case. In the instant case, even if the challenged argument were only debatably erroneous, the trial court's discretion in granting the new trial cannot be disturbed.

The proper rule applicable to the consideration of such an error as a ground of a motion for new trial was stated in *Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153 [323 P.2d 391]. There the trial court gave an instruction that was defective in a minor degree. The trial court granted a new trial. ■ On appeal from that order we stated (p. 159) : "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears, and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. . . . ■ It has also been said that the power of the judge to do justice by ordering a new trial is not impaired even though the moving party is technically estopped to claim error or has waived his right to complain. [Citations.]"

In *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295 [288 P.2d 989], erroneous evidence was introduced and a new trial granted by an order not specifying the basis of its issuance. At page 307 it was stated: "Counsel for appellants argue that respondent lost its right to have the Fuller evidence stricken because counsel did not initially object to the questions that elicited the objectionable matter. . . . Even if the moving party was technically estopped to claim error, that fact would not impair the power of the court to do justice by granting the new trial [citations]."

In *Sloboden* v. *Time Oil Co.,* 131 Cal.App.2d 557 [281 P.2d 85], a given instruction was defective in a minor respect. The trial court granted a new trial. The District Court of Appeal stated (p. 558): "Appellant argues its appeal as if the issue were whether the giving of this erroneous instruction was prejudicial, and assumes that the burden is on respondent to show that it was. That is not the law. Quite to the contrary, the burden is upon appellant to show that such erroneous instruction could not possibly have misled or confused the jury. The proper rule, supported by many cases, is stated as follows in 4 Cal.Jur.2d page 476, section 598:

" 'The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse. This is especially so when the discretion is used in awarding a new trial, for this action does not finally dispose of the matter, and it is only in rare instances and on very strong grounds that the reviewing court will set aside such an order. . . .

" '. . . But so long as a reasonable or even fairly debatable justification under the law is shown for the action taken, that action will not be set aside, even if, as a question of first impression, the appellate court might feel inclined to take a different view.' "

Thus the question is not whether the challenged argument was prejudicially erroneous, but whether it was sufficiently misleading so that the trial court that had seen and heard the witnesses could find that it was improper. If that point is even reasonably debatable, the discretion of the trial court cannot be disturbed.

The error, it must be conceded, does not appear to have been too serious. Certainly, if the trial court had denied the motion we would not disturb the ruling. But the court did not deny, it granted. This was done after the trial judge had

stated that he should have directed a plaintiff's verdict, that, under the facts, liability should attach, and that the defense verdict not only surprised him, but was a miscarriage of justice. While the error is a minor one, we cannot close our eyes to these facts. The intent of the trial court to grant a new trial on the ground of insufficiency of the evidence is crystal clear. Obviously, had the clerk entered the proper order, that order would be affirmed. Although we cannot uphold the order on that ground, we do know that justice requires that the order be affirmed. We have before us an error, minor it is true, but an error nevertheless. In assessing that error we should give considerable weight to the expressed opinion of the trial court that there had been a miscarriage of justice. As long as there is any possible ground to sustain the order we should do so, even if that ground is only a debatable one. Such a ground exists. Under well-settled law we should affirm the order granting the new trial.

The order granting the new trial is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Tobriner, J., and Peek, J., concurred.

McCOMB, J.—I dissent. I would reverse the order for the reasons expressed by Mr. Justice R. M. Brown in the opinion prepared by him for the District Court of Appeal in *Malkasian* v. *Irwin* (Cal.App.) 37 Cal.Rptr. 134.

Appellant's petition for a rehearing was denied September 24, 1964. McComb, J., was of the opinion that the petition should be granted.