[L.A. No. 30612. Jan. 18, 1977.]

*CITY OF LOS ANGELES, Plaintiff and Respondent, v.
MAHRIA LAMAR DECKER, Defendant and Appellant.

*Reporter's Note: This case was previously entitled "City of Los Angeles v. Hall."

COUNSEL

Fadem, Berger & McIntire, Fadem, Berger & Stocker, Gregory M. Bergman, Michael M. Berger and Howard M. Knee for Defendant and Appellant.

Harold L. Howard and John B. Harman as Amici Curiae on behalf of Defendant and Appellant.

Burt Pines, City Attorney, Milton N. Sherman, Chief Assistant City Attorney, Lawrence M. Nagin and James H. Pearson, Assistant City Attorneys, for Plaintiff and Respondent.*

OPINION

SULLIVAN, J.—In this action in eminent domain the condemnee, Mahria Decker, appeals from a judgment which awarded compensation in the amount of $29,012 for the taking of her single family residence for public airport purposes.

In September 1967 the Board of Airport Commissioners (Board) determined to expand and enlarge the Los Angeles International Airport (Airport) and to that end passed a resolution authorizing the acquisition of the subject properties, situated in an area comprised of single family residences adjacent to the north runways of the Airport. On March 1, 1971, as requested by the Board's resolution, the Los Angeles City Council (Council) adopted an ordinance of condemnation.

At the time of the Board's resolution, the north runways had been opened to regular commercial jet traffic; as a result, the subject properties were placed directly in the final approach of the jet traffic and subjected to extreme noise and vibration. Shortly thereafter, many owners of the affected properties initiated proceedings to rezone the area for commercial and industrial uses.

In 1970 the planning committee of the Council issued its report concerning the proposed zone change, which read in part as follows: "The southerly portion of the subject area is directly in the approach

---

*Reporter's Note: The record reflects that the actual trial was not conducted by the counsel listed for respondent.

pattern for [runways 24R and 24L] which are located only 1500 feet to the west. The present R1 zone and R1 development of this area is contrary to all principles of good zoning practice which dictates that such areas not be utilized for noise sensitive uses or for concentrations of people. The public health, safety and general welfare of this area and community would be best served by permitting redevelopment of this area for those types of commercial and industrial use which are compatible with the environmental problems associated with the airport." Accordingly in July 1970 the Council passed a resolution designating as (Q)M2 the area sought to be acquired for airport purposes. This designation would permit commercial development of the properties if certain requirements were met, the most important being that any development should proceed in units of five-acres or complete city blocks.

On February 1, 1972, the city brought the instant action in eminent domain covering all of the subject properties. Four parcels, including the parcel belonging to defendant Mahria Decker, were consolidated for trial.

The principal valuation issue at trial was the highest and best use to which the properties could be put. Robert W. Beeney, the appraiser called by defendant property owners, testified that the highest and best use was for the construction of airport related facilities, such as warehouses, rent-a-car lots, air freight units, and especially parking for the Airport. Based on these uses, which had been approved in principle, but subject to the (Q)M2 zoning requirements, defendants' appraiser valued the Decker property at $65,000.

Two appraisers—Richard Sparks and Davis Brabant—called by the city, testified that in their opinion it would be very unlikely that any developer would undertake the development of airport related facilities in the area because of the requirement that a minimum of five acres or complete city blocks be developed. Compliance with the conditions of the (Q)M2 classification would entail obtaining the consent of some 900 homeowners. This would be very difficult to accomplish in view of the likelihood that some of the homeowners would hold out for high prices or refuse to consent under any circumstances. Therefore, opined the appraisers, the highest and best use of the area remained residential, and the fair value of the Decker property for such use was $27,000. In his closing argument to the jury the attorney for the city attacked defendant's claim that there was a need for additional airport parking and

emphasized testimony in the record to the contrary.[1] The jury accepted the valuation based on the use of the property for a residence and awarded defendant Decker $29,012.[2] On October 30, 1973, judgment was entered.

On December 14, 1973, defendant moved for a new trial on all statutory grounds. As disclosed by the record, the principal ground urged may be summarized as follows: On November 15, 1973, less than three weeks after entry of judgment, defendant discovered that on that day the Board had approved a final environmental impact report (EIR) recommending a parking facility of 4,000 spaces in the very area of the properties—including defendant's parcel—covered by the city's action in eminent domain. Since this was a final report, it was clear that the city knew, and for some time had known, that there was an acute need for airport parking and that the subject properties were suitable for that purpose. Defendant urged that although the city had known the property would be put to the very use declared by defendant's witness Beeney to be the highest and best use for the property, nevertheless the city at trial had concealed this fact and had introduced evidence to the contrary. Accordingly defendant contended in support of her motion that this conduct violated the ethical duties of government attorneys in condemnation cases whose objective is to determine constitutionally compelled

---

[1]The city attorney argued: "Well, Mr. Beeney says there is such a need for parking that this would be done. He indicates that based on 1985 master planning passenger counts for Los Angeles International Airport, he concludes, well, there would be such a need for parking in here. Well, the question is a study as to what would happen in 1985, 12 or 13 years from our date of value, what kind of influence that would have on a buyer going in here as of the date of value and spending that kind of money. What happens in 1985, let's say there is a lot of conjecture involved.

"I think another example of the lack of need for parking outside the airport . . . is a picture that was introduced into evidence. No reference was made to it in Mr. Stocker's opening statement but he may in his closing statement. It does show a parking lot on the corner of Sepulveda and 96th Street, an off-airport parking lot, which does appear to be full but then I see the date it was taken is April 25, 1971, and in checking my calendar, that is a Sunday afternoon and looking at the shadows on the picture it looks like it was taken on a Sunday afternoon, so if you have to take your pictures of an off-airport parking lot so close to the airport on a Sunday afternoon to show the parking lot is filled, that to me is an indication that you are pretty hard up for data to try to show what the off-airport parking lot situation is.

"Maybe I mentioned it but maybe I didn't, that even though McCulloch has acquired these properties on the south side of 96th Street, from the testimony there are still houses setting on these lots. Now, if there was really a parking need or off-airport parking need, in other words, enough people didn't want to park on the airport who were willing to park off the airport, it is feasible to think McCulloch would have torn down these houses and developed them into parking lots, which they apparently haven't done."

[2]Since Mahria Decker is the only defendant involved in the instant appeal, our use of "defendant" hereafter refers only to her.

"just compensation," denied her a fair proceeding, and thus constituted a ground for granting a new trial. The motion for new trial was denied. This appeal followed.

So far as the record reveals, the city has never denied that it had known in advance of trial that the portion of the condemned property including defendant's parcel was going to be used as a parking lot for the Airport, connected to the Airport by trams. We will accordingly assume that at the time of preparation for trial the city knew that the condemned property was going to be used as a parking lot for the Airport.

· Defendant's position before us, as before the trial court, is this: Since the city itself had determined that there was a need for airport parking and had known that the condemned property was to be used for such purpose, but nevertheless had presented evidence and argument denying any such need, it committed misconduct rendering the trial unfair and entitling defendant to a new trial. The city responds that it committed no misconduct because the fact that the condemned land was to be used for airport purposes was inadmissible evidence under *Merced Irrigation Dist.* v. *Woolstenhulme* (1971) 4 Cal.3d 478 [93 Cal.Rptr. 833, 483 P.2d 1].

It is well settled in California that the condemned property is not to be valued as part of the proposed improvement. This rule, established in *San Diego Land etc. Co.* v. *Neale* (1888) 78 Cal. 63, 74-75 [20 P. 372], was recently reaffirmed and restated in *Merced Irrigation Dist.* v. *Woolstenhulme, supra,* 4 Cal.3d 478, 490-491: "We begin with the seminal decision of *San Diego Land etc. Co.* v. *Neale* (1888) . . . . In *Neale,* defendant's land was being condemned as a reservoir site in connection with the construction of a dam on a neighboring tract. At trial, the condemnee asked his appraiser to evaluate the land on the basis of its use as a reservoir site, taking into account the on-going construction of the dam. In holding this question improper on appeal, the *Neale* court declared: 'it seems monstrous to say that the benefit arising from the proposed improvement is to be taken into consideration as an element of the value of the land. . . .' In context, this statement, which gave rise to the doctrine relied on by the district in the instant case, clearly is no more than a declaration of the firmly established premise that 'compensation is based on loss imposed on the owner, rather than on benefit received by the taker. [Citations.] The beneficial purpose to be derived by the condemner's use of the property is not to be taken into consideration in determining market values, for it is wholly irrelevant.' (*People* v. *LaMacchia* (1953) 41 Cal.2d 738, 754 . . . .) Thus, the improper

'enhancement' or 'benefit' referred to in *Neale* is simply the increase in value which a condemned tract gains when it is valued *as part* of the proposed project . . . . It is clear, of course, that this incremental value is one which could never be considered in determining 'just compensation' under the established definition of 'market value' . . . ." Defendant concedes that this is indeed the rule and that therefore the appraiser could not value the condemned property *as a parking lot within the expanded airport.*

It is also well established that "[i]f, however, the condemnor's proposed use is one of the highest and best uses of the property, the adaptability of the property for that purpose may be shown by the property owner. See *San Diego Land & Town Co.* v. *Neale [supra]* 78 Cal. 63 . . . ." (12 Cal. Law Revision Com. Rep. (1974) § 1263.330, p. 1834.) As indicated above, the *Neale* court while excluding valuation by the appraiser of the property as part of the proposed reservoir, nonetheless held that the condemnee could prove that the highest and best use of the property was as a reservoir site: "We think therefore, that it was proper to show the value of the property 'as a reservoir site.' " (*Id.* at p. 71; see also *Spring Valley W.W.* v. *Drinkhouse* (1891) 92 Cal. 528, 533-534 [28 P. 681]; *City of Stockton* v. *Ellingwood* (1929) 96 Cal.App. 708, 715 [275 P. 228]; *City of Stockton* v. *Vote* (1926) 76 Cal.App. 369, 401-407 [244 P. 609]; 4 Nichols, Eminent Domain (3d ed.) § 12.315, pp. 12-281-283.) The city concedes that this is the rule and indeed at trial defendant's appraiser was properly permitted to testify to parking as the highest and best use of the condemned property.

In this case we are concerned with the intersection of these two rules, presenting apparently a question of first impression. The crucial question before us arises because the condemnor at trial by testimony and argument not only denied that the use which it was in fact going to make of the property was the highest and best use but even concealed such fact from defendant. Before reaching the heart of the matter, we must make some preliminary observations.

■ Where due to zoning restrictions the condemned property is not presently available for use to which it is otherwise geographically and economically adaptable, the condemnee is entitled to show a reasonable probability of a zoning change in the near future and thus to establish such use as the highest and best use of the property. (*People* ex rel. *Dept. Pub. Wks.* v. *Arthofer* (1966) 245 Cal.App.2d 454, 462-463 [54 Cal.Rptr. 878]; 4 Nichols, Eminent Domain (3d ed.) § 12.322, p. 12-394.) The

*Arthofer* court stated the rule thusly: "The general rule is that present market value must be determined only by uses for which land is adaptable and available. [Citations.] However, where land sought to be condemned is not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, but the evidence tends to show a 'reasonable probability' of a change in the near future, the effect of such probability on the minds of purchasers generally may be taken into consideration in fixing present market value. [Citations.] The burden of proof as to reasonable probability of zone change is on the landowner [citations] and the evidence must at least be in accordance with the usual minimum evidentiary requirements, and that which is purely speculative, wholly guess work and conjectural, is inadmissible. [Citation.]"

Accordingly in the instant case, defendant had the burden of establishing the reasonable probability of a zoning change, since the property had been zoned R1, namely single family residential. Defendant introduced evidence of the (Q)M2 zoning ruling, which permitted rezoning of the area including the condemned property for commercial purposes provided certain conditions were met. In response the city introduced evidence to the effect that it was highly unlikely that the prescribed conditions would be met by private developers, that a zoning change was not probable, and that as a consequence the highest and best use of the condemned property was residential.

If at trial the city had confined itself to this position, we doubt that the problem now before us would have arisen. However, the city went further and contended, that even if there was a reasonable probability of a zone change, airport parking was not the highest and best use because there was no need for such parking. (See fn. 1, *ante.*) The city knew at that time that it had already determined through its airport Board that there was an urgent need for such parking, that this property was suitable for such use and that in fact the city was going to use the property for that purpose. Defendant attacks this conduct on two bases: (1) that by so denying this need for, and use of, the property the city and its attorney breached their ethical duties in a condemnation proceeding, whose object was to arrive at constitutionally compelled "just compensation"; and (2) that the city's determination that there was a need for additional airport parking and that the area of the subject properties would be suitable for such purpose was admissible evidence, which the city could not properly conceal. The city's sole response to these contentions is to assert the inadmissibility of the evidence under the *Woolstenhulme* rule.

We take up the second point first. As we have already pointed out, defendant, mindful of the *Woolstenhulme* rule, concedes that the city's contemplated use of the property for airport parking cannot be considered as a basis of valuation and that evidence of such use is inadmissible on the issue of value. However, defendant urges the admissibility of *different* evidence for a *different* purpose, namely evidence that the city had found there was a present need for airport parking and that defendant's property was part of the area found suitable for such a use. This latter type of evidence, argues defendant, was properly admissible to show the highest and best use of her property in her hands. At trial defendant presented evidence to the effect that airport parking was the highest and best use of her property at the date of valuation because there was a need for airport parking and her land was in an appropriate geographic and economic location to fulfill that need. The city's corroboration of this fact through the determinations of its airport Board was clearly relevant on the issue of highest and best use.

We have not been referred to, nor have we found, any authority holding that such evidence must be excluded. Indeed, its admissibility would seem to be a natural corollary to the well established rule that "if, however, the condemnor's proposed use is one of the highest and best uses of the property, the adaptability of the property for that purpose may be shown by the property owner." (12 Cal. Law Rev. Com. Rep., *supra,* § 1263.330.) *Woolstenhulme* does not bar such evidence, since it only precludes the valuation of the condemned property as part of the proposed improvement. The city's determination as to the adaptability of the property for airport parking purposes was relevant to show that *the property in the hands of defendant and not as part of the project* could have been used for airport parking. In other words, this evidence buttressed the testimony of defendant's witness that there was a present need for airport parking and that her land was in a suitable location to fulfill that need. Defendant still had the burden of establishing that it was reasonably probable under the zoning restrictions that private developers would put the property to such use. We therefore hold the evidence of the city's determinations as to the need for airport parking and the suitability of defendant's property for such purpose would have been admissible to show the highest and best use of the property in the hands of defendant.

The city has confined its argument to the point of the admissibility of the evidence. It does not contend that even had the evidence been admissible, the city would nonetheless have pursued the same course at

trial. It is perhaps fair to assume from this that in such event the city would not have presented testimony or pursued trial tactics denying such evidence. Nonetheless the fact remains that in this case the city in its argument to the jury specifically denied that there was any present need for airport parking and that defendant's property could fulfill this need. Defendant moved for a new trial on the principal ground that the city thereby committed misconduct and denied her a fair trial.

So far as the record reveals the city made no written opposition to the motion for new trial. At the hearing on the motion, the city limited its argument to the contention that the need or lack of it for airport parking was insignificant in the overall posture of the case because the city had focused its argument on the point that no private developer could meet the (Q)M2 zoning conditions. The city urged that no new trial was required because the evidence of lack of probable zoning change was so overwhelming that any possible misrepresentation as to the need for airport parking was unimportant. On appeal, the city has not addressed itself at all to the question of whether any misconduct it may have committed in denying the need for airport parking would justify a new trial.

We must now determine whether the city's conduct in this case required a new trial and therefore whether the trial court erred in denying defendant's motion. Section 657, subdivision 1, of the Code of Civil Procedure provides that a new trial may be granted for an "[i]rregularity in the proceedings of the court, jury or adverse party . . . by which either party was prevented from having a fair trial." ▮ It is well settled that misconduct of counsel is such an irregularity and a ground for new trial. (*Malkasian* v. *Irwin* (1964) 61 Cal.2d 738, 745 [40 Cal.Rptr. 78, 394 P.2d 822]; *Gray* v. *Robinson* (1939) 33 Cal.App.2d 177, 182-184 [91 P.2d 194]; 5 Witkin, Cal. Procedure (2d ed. 1971) § 24, p. 3602.) It is also well settled that misconduct has often taken the form of improper argument to the jury, such as by urging facts not justified by the record or suggesting that the jury may resort to speculation (*Malkasian* v. *Irwin, supra,* 61 Cal.2d 738, 747); by informing the jury that an injured party has been compensated by a codefendant (*Tobler* v. *Chapman* (1973) 31 Cal.App.3d 568, 575 [107 Cal.Rptr. 614]); and by informing the jury of an offer of settlement and compromise (*Granville* v. *Parsons* (1968) 259 Cal.App.2d 298, 304 [66 Cal.Rptr. 149]).

▮ It seems clear that the city and its attorney committed misconduct in this case in its argument to the jury. Defendant focused her

theory of valuation on the point that airport parking was the highest and best use of her land. Essential to that claim was the fact that there was a present need for airport parking and that her property was suitable for that purpose. The city, knowing that its own airport Board had determined that there was such a need and that defendant's property was suitable to fill it, committed misconduct when it improperly argued to the jury that there was no need for such airport parking and that the claim of such a need was speculative. (See fn. 1, *ante.*) Rule 7-105 of the Rules of Professional Conduct of the State Bar of California requires: "In presenting a matter to a tribunal, a member of the State Bar shall: (1) Employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law." As suggested by the American Bar Association, a government lawyer may be under an even higher duty: "A government lawyer in a civil action . . . has the responsibility to seek justice and to develop a full and fair record, and he should not use his position or the economic power of the government to harass parties or to bring about unjust settlements or results." (ABA Code of Prof. Responsibility, canon 7, ethical consideration 7-14.) Occupying a position analogous to a public prosecutor, he is "possessed . . . of important governmental powers that are pledged to the accomplishment of one objective only, that of impartial justice." (*Professional Responsibility: Report of the Joint Conference* (1958) 44 A.B.A.J. 1159, 1218.) ■ The duty of a government attorney in an eminent domain action, which has been characterized as "a sober inquiry into values, designed to strike a just balance between the economic interests of the public and those of the landowner" (*Sacramento etc. Drainage Dist.* v. *Reed* (1963) 215 Cal.App.2d 60, 69 [29 Cal.Rptr. 847]), is of high order. "The condemnor acts in a quasi-judicial capacity and should be encouraged to exercise his tremendous power fairly, equitably and with a deep understanding of the theory and practice of just compensation." (Hogan, Trial Techniques in Eminent Domain (1970) pp. 133, 135.)

We are of the view that, under the circumstances detailed above, the city by improperly denying the need for airport parking, misled the jury, failed to develop a full and fair record, and breached its responsibility to arrive at just compensation. We hold that this constitutes misconduct requiring a new trial.

■ We are mindful of the fact that a trial judge is accorded a wide discretion in ruling on a motion for new trial and that the exercise of this

discretion is given great deference on appeal. (See *Malkasian* v. *Irwin, supra,* 61 Cal.2d 738, 747; 6 Witkin, Cal. Procedure (2d ed. 1971) § 293, pp. 4278-4279.) However, we are also mindful of the rule that on an appeal from the judgment it is our duty to review all rulings and proceedings involving the merits or affecting the judgment as substantially affecting the rights of a party (see Code Civ. Proc., § 906), including an order denying a new trial. In our review of such order *denying* a new trial, as distinguished from an order *granting* a new trial, we must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial. (*Deward* v. *Clough* (1966) 245 Cal.App.2d 439, 445 [54 Cal.Rptr. 68]; *Wilkinson* v. *Southern Pacific Co.* (1964) 224 Cal.App.2d 478, 483-484 [36 Cal.Rptr. 689]. See *Tobler* v. *Chapman, supra,* 31 Cal.App.3d 568, 578-579.) ▮ In the case at bench, since the purported need for airport parking and the suitability of defendant's property for that purpose were critical to the issue of valuation, we find it reasonably probable that the jury would have arrived at a different verdict in the absence of the argument by the city and therefore deem it prejudicial misconduct which denied defendant a fair trial and entitles her to a new trial. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

For the guidance of the court upon retrial, we call attention to the fact that the Legislature has enacted the new Eminent Domain Law (Code Civ. Proc., § 1230.010 et seq.) effective July 1, 1976, and that section 1260.210 thereof changed the rule with respect to the burden of proof on the issue of compensation to the effect that "neither the plaintiff nor the defendant has the burden of proof on the issue of compensation." Therefore, it will no longer be appropriate to instruct in terms of BAJI No. 11.98 that the defendant bears the burden of proof on the issue of compensation.

The judgment is reversed.

Wright, C. J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

Respondent's petition for a rehearing was denied February 17, 1977.