Filed 7/30/15  Estate of Shapiro CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of MARVIN ROBERT SHAPIRO, Deceased. | |
| _____ | G050036 |
| DANIEL R. SHAPIRO, | (Super. Ct. No. 30-2012-00544481) |
| Petitioner and Appellant, | O P I N I O N |
| v. | |
| JEANNE HUGHES SHAPIRO, | |
| Objector and Respondent. | |

Appeal from a judgment and order of the Superior Court of Orange County, Randall J. Sherman, Judge.  Affirmed.

Daniel R. Shapiro, in pro. per., for Petitioner and Appellant.

Law Office of Paul S. Nash and Paul S. Nash; Pallotta Law and Edward J. Pallotta, Jr., for Objector and Respondent.

## INTRODUCTION

Daniel Shapiro appeals from the judgment following his unsuccessful will and trust contest and from the subsequent denial of his motion for new trial. Estate planning documents prepared in 2011 for Daniel's father, Marvin Shapiro, disinherited Daniel, Marvin's sole surviving child, in favor of a trust of which Marvin's second wife, Jeanne, was trustee.[1] Daniel challenged the will and the trust on grounds of undue influence exercised by Jeanne and of lack of capacity.[2] The trial court found in Jeanne's favor and denied Daniel's subsequent motion for a new trial.

We affirm both the judgment and the order denying the motion for new trial. Daniel's claims of error boil down mainly to disagreements with the trial court's findings of fact. These findings rest on substantial evidence, and we do not, at the appellate level, reweigh evidence. The remaining issues involve the exercise of the trial court's discretion, which we find was not abused.

## FACTS

Marvin was diagnosed with Parkinson's disease in 2006. He was followed by a neurologist, who saw him every few months, noting Marvin's gradual decline. In late 2010, Marvin's condition abruptly worsened, and an MRI disclosed that he had a cancerous brain tumor. He had surgery in December 2010, and spent about two months in nursing facilities before returning home in late February 2011. Although he had both chemotherapy and radiation treatments, they were ineffective to save his life.

---

[1] "Hereafter, we refer to the parties by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

Mrs. Shapiro's name was alternately spelled "Jean" and "Jeanne" throughout the trial transcript. We surmise that the latter name was pronounced "Jeanie," because early in the trial her counsel distinguished between the pronunciation of "Jeanne" and "Jean." Mrs. Shapiro's name was spelled "Jeanne" on the documents filed with the trial court, and we adopt that spelling here.

[2] Daniel filed a separate action challenging the trust. (Case No: 30-2012-00544306) The cases were consolidated for trial.

In March 2011, Marvin and his wife, Jeanne, executed wills and a trust, prepared for them by an estate planning attorney. The attorney, who is also a psychologist, satisfied himself that Marvin had the requisite capacity to execute a will and set up a trust. A second attorney, called in at the same time to independently confirm Marvin's capacity, agreed he was competent. The drafting attorney also confirmed that Marvin was acting freely, by meeting with him alone to ascertain whether the will and the trust accurately reflected his wishes for his estate. They specifically discussed omitting Daniel from the estate plan. These two attorneys witnessed the execution of the will. Marvin died in June 2011.

Marvin's son and sole surviving child, Daniel, filed a petition to probate a holographic will dated 1984. The 1984 will left Marvin's estate to Daniel and to his sister, Georgine, who died in 2008. Under the 1984 will, Daniel would receive the entire bequest. Jeanne filed a petition to probate the will signed in 2011, just before Marvin's death, which, in effect, disinherited Daniel.[3] Another will, a holographic one Marvin created in 1987, left bequests to Daniel and Georgine, but left the bulk of Marvin's property to Jeanne.

Daniel contested the 2011 will and trust on incapacity and undue influence grounds. After the will and trust contests were consolidated for trial, the combined case was tried in January 2014.

On the morning of the first day of trial, January 27, Daniel's counsel asked the court to continue the trial for another four months. It had already been continued twice. Counsel said Daniel had sustained a head injury in a car accident the previous November and could not testify. The court denied the request for continuance, and trial

---

[3] The will was a pourover will, which left Marvin's property to the trustees of the Marvin R. Shapiro and Jeanne H. Shapiro Family Trust. The trust, in turn, made no provision for Daniel. The will specifically excluded Daniel from inheriting any part of Marvin's estate or from being appointed an executor.

3

commenced. Daniel joined the trial in the afternoon. After three days of trial, the court ruled in Jeanne's favor and granted her petition to probate the 2011 will.

Daniel moved for a new trial on grounds of irregularity in the proceedings, improper orders of the court, accident or surprise, newly discovered evidence, insufficient evidence, and error in law. (See Code Civ. Proc., § 657, subd. (1), (3), (4), (6), (7).) He claimed, as he does on appeal[4], that Jeanne's attorneys misled the court, that the 1987 will was invalid, that the court misunderstood certain testimony, that Daniel's counsel was not prepared to go forward with trial on January 27 (and therefore did not have a deposition transcript handy to impeach Jeanne's witness), and that the court erred in not applying the presumption of Family Law section 721.

## DISCUSSION

Examining the opening brief closely, we have determined that Daniel identified five main issues on appeal. They are: (1) the court's refusal to grant a continuance; (2) the court's disregard of evidence of Marvin's incapacity; (3) the court's disregard of evidence of undue influence; (4) the admission of the 1987 will into evidence; and (5) the denial of the motion for a new trial. We review all but one for either substantial evidence or abuse of discretion.[5]

### I.        Trial Continuance

The decision to grant or deny a request for a continuance is left to the trial court's discretion. (*Estate of Smith* (1973) 9 Cal.3d 74, 81; *Estate of McCarthy* (1937) 23 Cal.App.2d 389, 393-394.) Daniel urges two reasons for taxing the trial court with abuse

---

[4]     Daniel's opening brief on appeal is the memorandum of points and authorities for the motion for new trial with a few inconsequential changes.

[5]     Daniel also argues, without citation to authority, that the trial court "breached" its discretion when it limited his testimony regarding his relationship with his father to the last 10 years of Marvin's life (2001 to 2011), while entertaining evidence about the 1987 will. An argument made without citation to supporting authority is deemed waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) In any event, the court did not restrict Daniel's testimony to any particular time – it simply asked for a time frame for some of Daniel's statements, and Daniel's counsel specified "the last ten years."

of discretion for not continuing the trial. First, he was disabled from his car accident and therefore unable to testify, and, second, his counsel was not prepared.

As to Daniel's claimed disability, his counsel described his condition in detail on the first day of trial, while she argued extensively for a continuance. Although it is not clear from the record whether the court received a letter from Daniel's doctor regarding his symptoms, his counsel orally supplied the court with all the information it contained. During the second day of trial, the court asked Daniel a series of direct questions about his condition while he was testifying. Daniel told the court that he felt "my head is full of oatmeal. It's not exactly fuzzy but I get a sensation through my whole head that it's filled with something." The court asked about his current ability to think and to testify, and Daniel stated that his memory was affected as well as his ability to concentrate and to keep to the point. The court allowed him to continue testifying.

Evidence Code section 700 provides: "Except as otherwise provided by statute, every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter." Evidence Code section 701, subdivision (a), provides: "A person is disqualified to be a witness if he or she is: [¶] (1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him; or [¶] (2) Incapable of understanding the duty of a witness to tell the truth." Determining a witness' competence to testify is within the trial court's discretion. (*Cooper v. Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 945.) As The Law Revision Commission has explained, "[T]he Evidence Code has made a person's capacity to perceive and to recollect a condition for the admission of his testimony concerning a particular matter instead of a condition for his competency to be a witness. And, under the Evidence Code, if there is evidence that the witness has those capacities, the determination of whether he in fact perceived and does recollect is left to the trier of fact." (Cal. Law Revision Com. com., 29B, Pt. 2 West's Ann. Evid. Code (1995 ed.) foll. § 701, p. 284.)

5

Daniel makes much of the fact that he believes the court refused to consider his doctor's letter. The record includes a one-page letter attached to a declaration by his counsel, which she attempted to file the Friday before the Monday trial date, seeking a trial continuance. The clerk's office rejected the entire filing; as the court pointed out on Monday, a continuance requires either a stipulation (see Super. Ct. Orange County, Local Rules, rule 388) or an ex parte application. On the morning of trial, Daniel's counsel referred to a 10-page report from the doctor that was not yet ready, and she offered to give the letter attached to her rejected declaration to the judge on the spot. He stated that he wanted to see the one-page letter. The record does not indicate what happened to the letter after that. It was not introduced into evidence.

Daniel was on the stand for part of the first day of trial and most of the second day. Nothing in the record indicates that he could not express himself or even that his ability to perceive and recollect was compromised. He testified to conversations he had with his father in the 1990's and to events he witnessed during his father's last illness in 2011. The trial court was in a much better position to determine Daniel's capacity to testify than we are, having observed him on the spot. Other factors also militated against a continuance. For one thing, Daniel could not assure the court he would be better able to testify in four months – the length of the continuance he sought – than he was at present or even that his ability to testify would *ever* be better than at present. He had already had two continuances, one of them based on the same auto accident.

The record does not indicate either obduracy or antagonism on the part of the trial court. From all we can see, it exercised its discretion impartially.

As to Daniel's counsel's lack of preparedness, that is hardly a reason to continue a trial that has already been continued twice. Counsel appears simply to have assumed the court would grant her request, a reckless assumption under the circumstances, especially as opposing counsel indicated beforehand that they would not

6

agree to a continuance. As a result, according to Daniel, she did not have an important deposition transcript with her to impeach Jeanne's first witness, and she did not remember – and therefore did not challenge – the context of the passage opposing counsel read into the record regarding Marvin's accusation of theft against Daniel, which will be discussed in more detail below.[6] The trial court cannot be faulted for counsel's failure to observe the litigator's motto: "Try for the best, expect the worst." If this is an issue at all, it is an issue between Daniel and his attorney.

## II.     Mental Capacity

Probate Code section 6100.5, subdivision (a), establishes the standard for mental incompetence to make a will.[7] We review a finding of competency to make a will for substantial evidence. (*Estate of Jamison* (1953) 41 Cal.2d 1, 12-13, superseded by statute on other grounds.)

Substantial evidence supported the trial court's findings. Marvin's competency was evaluated by two experienced estate planning attorneys on the day he executed his will, and both agreed he met the standard for testamentary capacity. Whether he was lucid at various other times is not controlling. "When one has a mental disorder in which there are lucid periods, it is presumed that his will has been made during a time of lucidity. [Citations.]" (*Estate of Goetz* (1967) 253 Cal.App.2d 107, 114.) Daniel's evidence did not overcome this presumption.

---

[6] She also could not produce a witness list when the court asked for it, and she had informed her witnesses that they would not be needed that day. At the hearing on the motion for new trial, she confirmed that she was not prepared – no trial brief, no motion in limine, no trial preparation meetings with the client.

[7] Probate Code section 6100.5, subdivision (a), provides: "An individual is not mentally competent to make a will if at the time of making the will either of the following is true: [¶] (1) The individual does not have sufficient mental capacity to be able to (A) understand the nature of the testamentary act, (B) understand and recollect the nature and situation of the individual's property, or (C) remember and understand the individual's relations to living descendants, spouse, and parents, and those whose interests are affected by the will. [¶] (2) The individual suffers from a mental disorder with symptoms including delusions or hallucinations, which delusions or hallucinations result in the individual's devising property in a way which, except for the existence of the delusions or hallucinations, the individual would not have done."

As he does elsewhere in his briefs, Daniel simply collects all the evidence favorable to his side of the controversy and ignores countervailing evidence. That is not how appellate review works – quite the reverse. We uphold the trial court's findings supported by substantial evidence, even in the face of conflicts. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630-631.)

**III.          Undue Influence**

A trial court's finding on undue influence is subject to review for substantial evidence. (*Estate of Larendon* (1963) 216 Cal.App.2d 14, 19.) "Upon a claim of insufficiency of the evidence the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citation.] The power of an appellate court begins and ends with a determination of whether there is any substantial evidence, direct or indirect, contradicted or uncontradicted, to support the inferences adopted by the trial judge or jury. The review starts with a presumption that there is evidence in the record which sustains every finding of fact. [Citation.] When different inferences reasonably can be drawn from the evidence the reviewing court is without power to substitute its deductions for those of the trial court. [Citation.] 'All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' [Citation.]" (*Estate of Moore* (1956) 143 Cal.App.2d 64, 67.)

Undue influence, as defined in Welfare and Institutions Code section 15610.70, subdivision (a), means "excessive persuasion that causes another person to act

or refrain from acting by overcoming that person's free will and results in inequity."[8] "'Proof, to establish undue influence, must be had of a pressure which overpowers the mind and bears down the volition of the testator at the time the will is made. It consists in the exercise of acts or conduct by which the mind of the testator is subjugated to the will of the person operating upon it.' [Citations.]" (*Estate of Moore, supra*, 143 Cal.App.2d at p. 71.)

The undue influence issue at trial centered on Daniel's disinheritance in 2011, after having been named Marvin's heir, along with his sister, in 1984. Daniel maintains the trial judge misunderstood some key testimony that may have supported Daniel's claim Jeanne unduly influenced Marvin when he executed the will and trust.

While issuing his ruling, the judge mused aloud about why Marvin should have disinherited Daniel. The answer supplied was that in 2011, just before the will and trust were executed, Jeanne told Marvin that Daniel had stolen his money. "That could explain why [Marvin] would disinherit his son." But then the judge consulted Daniel's deposition testimony, which Jeanne's counsel had read into the record. This series of questions purportedly had Daniel denying that either Jeanne or Marvin had accused Daniel of stealing Marvin's money, in 2011 or ever. The judge thought this deposition

---

[8]    Welfare and Institutions Code section 15610.70, subdivision (a), provides: "'Undue influence' means excessive persuasion that causes another person to act or refrain from acting by overcoming that person's free will and results in inequity. In determining whether a result was produced by undue influence, all of the following shall be considered: [¶] (1) The vulnerability of the victim. Evidence of vulnerability may include, but is not limited to, incapacity, illness, disability, injury, age, education, impaired cognitive function, emotional distress, isolation, or dependency, and whether the influencer knew or should have known of the alleged victim's vulnerability. [¶] (2) The influencer's apparent authority. Evidence of apparent authority may include, but is not limited to, status as a fiduciary, family member, care provider, health care professional, legal professional, spiritual adviser, expert, or other qualification. [¶] (3) The actions or tactics used by the influencer. Evidence of actions or tactics used may include, but is not limited to, all of the following: [¶] (A) Controlling necessaries of life, medication, the victim's interactions with others, access to information, or sleep. [¶] (B) Use of affection, intimidation, or coercion. [¶] (C) Initiation of changes in personal or property rights, use of haste or secrecy in effecting those changes, effecting changes at inappropriate times and places, and claims of expertise in effecting changes. [¶] (4) The equity of the result. Evidence of the equity of the result may include, but is not limited to, the economic consequences to the victim, any divergence from the victim's prior intent or course of conduct or dealing, the relationship of the value conveyed to the value of any services or consideration received, or the appropriateness of the change in light of the length and nature of the relationship." This statute became effective on January 1, 2014, just before the trial. Probate Code section 86 incorporated the Welfare and Institutions Code definition of undue influence into the Probate Code.

9

testimony "huge," in part because it predated Daniel's auto accident and was presumably more reliable than his "oatmeal-headed" trial testimony.  The judge concluded the testimony negated the stealing-my-money explanation for Daniel's being disinherited.

As Daniel pointed out both during trial *and* in his motion for a new trial, the deposition testimony read into the record dealt with in-person, face-to-face accusations of stealing.  Daniel testified earlier in the deposition, and at trial, that he, Marvin, and Jeanne had had a telephone conversation involving a lot of screaming in which both Marvin and Jeanne accused him of stealing Marvin's money.[9]  Daniel admitted, however, that Marvin did not say Jeanne was the source of this information.

Daniel accused Jeanne's counsel of deliberately misleading the judge by introducing the deposition testimony without mentioning that it referred only to in-person conversations and not the telephone call.  Although Daniel clarified the testimony himself on the stand, it might have behooved his counsel to reinforce the difference in context on redirect.  According to Daniel, however, she was not sufficiently alert to do this.

But the trial court's determination regarding undue influence rested on more than just whether Jeanne lied to Marvin about Daniel in 2011.  While that evidence might have supported a finding of undue influence, the court had substantial countervailing evidence.  The court stated, "I would have to conclude . . . that Jeanne Shapiro overcame [Marvin's] free will, and I don't see that in the evidence in this case."  The court pointed out that the 1987 will left most of Marvin's estate to Jeanne.  It noted the lack of evidence to support Daniel's claim that Jeanne isolated Marvin.  And it relied also upon the testimony of the estate planning attorney and the neurologist's testimony that Marvin was not a person to be ordered about.

---

[9] At first glance, the mistake appears to have benefited Daniel.  It removed a plausible reason for disinheriting him, so there must have been some other reason, maybe a nefarious one.  The end of the ruling, however, suggests that the court had been considering the incident as Jeanne's lying to Marvin to unduly influence him.

We can reverse a judgment only if the appellant explains how the outcome would have been different had the error not been committed, in other words, how the error was prejudicial. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) We do not develop these explanations for the parties. (*Ibid.*) In this case, ample evidence supported the trial court's conclusion Jeanne did not unduly influence Marvin to disinherit Daniel, even if we allow that the deposition testimony confused the issue. The record does not indicate the court's decision turned on this evidence, outweighing all the other evidence of no undue influence. In addition, the trial court had the opportunity to revisit the issue with the correction painstakingly explained – as part of the motion for new trial – and evidently did not consider the evidence important enough to justify a new trial.[10]

**IV.        The 1987 Will**

Marvin created a one-page holographic will in 1987. It was notarized, but not witnessed. On the first day of trial, Daniel's counsel cross-examined Jeanne's witness extensively on the difference between it and the 2011 will and trust and directed the witness to examine a copy in an exhibit book. Jeanne sought to move it into evidence, but Daniel successfully objected to it as lacking foundation, even though his own counsel had raised the issue on cross-examination.[11] Later, Jeanne provided the necessary foundation, and the will was received into evidence.[12] The court was careful to explain that this will was admitted as an exhibit, not into probate.

---

[10] Daniel did not specify the ground for a new trial this issue represents, and we have not been able to fit it into any of the statutory categories. It cannot be "[a]ccident or surprise" (see Code Civ. Proc., § 657, subd. (3)), because Daniel immediately corrected opposing counsel while he was on the stand, and "ordinary prudence" could have guarded against it. It cannot be "[n]ewly discovered evidence" (see *id.* subd. (4)), because the correct testimony was contained in Daniel's deposition transcript. The remaining categories are completely inapplicable.

[11] Daniel argues that Jeanne's counsel violated their professional duties as lawyers by introducing testimony regarding the 1987 will. He contends this version was not produced until February 2013, and Jeanne's counsel did not mention it in his deposition. In the first place, Daniel – not Jeanne – brought up the 1987 will at trial. Moreover, Daniel had the will nearly a year and apparently did nothing to investigate it. This is simply another instance of failure to prepare for trial.

[12] On appeal, Daniel asserts that the 1987 will is hearsay, but no hearsay objection was raised at trial. (See Evid. Code, § 353.)

11

The 1987 will left Daniel and his sister $50,000 each, plus equal shares of Marvin's Utah corporations. Daniel estimated that his father's estate was worth $3 million in 1987, so each cash bequest was less than 2 percent of the total estate. The will bequeathed $25,000 to the Santa Ana Zoo and left the rest of his property to Jeanne.

We review the trial court's decisions to admit or exclude evidence for abuse of discretion. (*Dart Industries, Inc. v Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078; *Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) The court admitted this document, not as a probated will, but as a piece of evidence to help the trier of fact ascertain the testator's intent. The significance of the 1987 will was that it materially diminished the bequests to Marvin's children in favor of Jeanne, thereby casting doubt on Daniel's contention that he was supposed to get everything and Jeanne nothing before she unduly influenced his father. Moreover, the 1987 will was made well before any question could have arisen about Marvin's mental capacity – before he had Parkinson's disease, or cancer, or a brain tumor. Marvin left the bulk of his property to Jeanne, essentially relegating his children to the status of minor beneficiaries along with the zoo. This fact, the judge found, supported the structure of the 2011 will and trust, which left everything to Jeanne, provided she survived Marvin, and to some charities after her death.

V.        **New Trial**

An appeal from an order denying a motion for new trial requires us to examine "the entire record, including the evidence, so as to make an independent determination whether the error was prejudicial." (*City of Los Angeles v. Decker* (1977) 18 Cal. 3d 860, 872.) We do not determine credibility, however; instead we accept the trial court's credibility determinations and findings of fact if substantial evidence supports them. (*People v. Nesler* (1997) 16 Cal.4th 561, 582.)

On appeal, Daniel identifies the following issues that should have prompted the trial court to grant his motion for new trial: the erroneous admission of the 1987 will;

12

the misleading impeachment testimony regarding stealing Marvin's money; the trial court's refusal to credit his testimony over Jeanne's on the issue of undue influence; the refusal to continue the trial, resulting in his counsel's being unprepared; and the failure to apply the presumption of Family Code section 721. Daniel does not match the issue with the ground for new trial,[13] leaving us to speculate as to how exactly he disagrees with the trial court. Because we have dealt with many of these issues in the previous sections, we will abbreviate the discussion here.

As noted above, the 1987 will was admitted only as evidence of Marvin's intent. Whether it was a valid will is irrelevant; it could just as easily been a letter from Marvin explaining what he wanted to do with his property. The court was entitled to weigh it with the other pieces of evidence.

Whether to grant a continuance, as stated above, rests with the trial court's discretion. In this case, the trial had already been continued twice, and Daniel was seeking another four-month extension, with no assurance he would then be any better able to testify. As it happened, Daniel did testify, and nothing in the record indicates that his ability to do so was significantly compromised. He was, for example, very quick to point out to opposing counsel that the deposition testimony read into the record regarding his father's accusations of theft referred to in-person conversations, not telephone calls.

Denying the continuance exposed Daniel's counsel's possible unreadiness to proceed with trial. Daniel says she was not prepared to cross-examine Jeanne's witness on certain matters or to rehabilitate Daniel's testimony regarding telephone and in-person conversations with his father. This failure is, however, not a basis for granting a new trial.

---

[13] The statutory grounds are: (1) irregularity in the proceedings preventing a fair trial; (2) misconduct of the jury; (3) accident or surprise, which ordinary prudence could not have guarded against; (4) newly discovered evidence; (5) excessive or inadequate damages; (6) insufficiency of the evidence to justify the decision; and (7) error in law, occurring at the trial and excepted to by the moving party. (See Code Civ. Proc., § 657.)

13

Family Code section 721, subdivision (b),[14] which surfaced first during closing argument, codifies a fiduciary standard for certain transactions between spouses. Under this code section, "a rebuttable presumption of undue influence arises when one spouse obtains an advantage over another in a community property transaction. . . . The presumption that the advantage was gained by the exercise of undue influence continues until it is dispelled. [Citation.] The burden of dispelling the presumption rests on the spouse advantaged by the transaction. [Citation.]" (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 297.)

The trial court found, first, that the code section did not apply, because what was at issue was an estate plan, not a community property transaction between husband and wife, and, second, even if the code section did apply and the burden of proof did shift to Jeanne, she had carried it. Regardless of whose burden it was to prove undue influence or lack of it, the court found sufficient evidence of its absence.

On appeal, Daniel in effect quarrels with the trial court's findings of fact. He claims there *was* evidence of Jeanne's undue influence over Marvin. He cites various pieces of evidence to support this assertion.

Daniel misconstrues our function, which is not to reweigh evidence but rather to ascertain whether sufficient evidence supports the trial court's findings of fact. (*Estate of Teel* (1944) 25 Cal.2d 520, 526.) Daniel's brief ignores the evidence that Marvin acted with free will when he executed the estate planning documents, notably the

---

[14] Family Code section 721, subdivision (b) provides, "Except as provided in Sections 143, 144, 146, 16040, and 16047 of the Probate Code, in transactions between themselves, spouses are subject to the general rules governing fiduciary relationships that control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other. This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections 16403, 16404, and 16503 of the Corporations Code, including, but not limited to, the following: [¶] (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying. [¶] (2) Rendering upon request, true and full information of all things affecting any transaction that concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions. [¶] (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse that concerns the community property."

evidence of his attorney and his neurologist, in addition to Jeanne's own evidence, which the trial court clearly credited over Daniel's. There was indeed conflict in the evidence, as well as issues of credibility. The court resolved these conflicts and issues in Jeanne's favor, and we do not second-guess the trial court from this distance.

## DISPOSITION

The judgment is affirmed. The order denying appellant's motion for new trial is affirmed. Respondent is to recover her costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


IKOLA, J.