Filed 11/4/15  Hongpanich v. Kosta CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CYNTHIA HONGPANICH, | B254591 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC474677) |
| SHAUN KOSTA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles F. Palmer, Judge.  Affirmed.

Pocrass & De Los Reyes and Jonathan E. Howell for Plaintiff and Appellant.

Robie & Matthai, Edith R. Matthai and Natalie A. Kouyoumdjian; Tseng & Associates and Jennifer Tina Tseng for Defendant and Respondent.

Cynthia Hongpanich (appellant) appeals from a judgment entered against her after a jury trial. The jury found that Shaun Kosta (respondent) was not negligent in this motor vehicle negligence action. Appellant argues that substantial evidence does not support the verdict in this case. We disagree, and finding no error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 16, 2010, appellant and respondent were involved in an accident on the southbound 110 freeway near the Hill Street exit. Respondent was driving a 1999 Toyota 4Runner and appellant was driving a 2003 Honda Accord. It is undisputed that respondent's vehicle collided with the rear of appellant's vehicle.

In December 2011, appellant filed a complaint against respondent. Trial commenced on November 4, 2013.

**Respondent's testimony**

Respondent testified that approximately a minute before the accident he entered the southbound 110 freeway from the Figueroa Street onramp. He merged into the number two or three lane, and remained there until the accident. The speed and flow of traffic was between 40 and 50 miles per hour. Shortly after merging onto the freeway, respondent noticed appellant's car. Respondent was traveling in the same lane as appellant, approximately five car lengths behind her car. There were no cars between them. Within a minute or so, respondent noticed appellant's brake lights come on. He saw a pair of brake lights, appellant's car and the car in front of her. Respondent's testimony was that it looked like appellant had rear-ended a car in front of her. Respondent could not swerve out of the way, as the lanes on either side of his vehicle were occupied by cars. Respondent could not stop in time to avoid the collision, and the front of his vehicle collided with the rear of appellant's Honda.

Respondent testified that after the collision, appellant jumped out of her vehicle and started waving her arms, saying "Don't leave, don't leave." All three cars involved exited the 110 freeway in the same order as they were on the freeway. Respondent was directly behind appellant's car, and appellant was directly behind the third car involved. According to respondent the driver of the car that appellant hit did not speak English.

2

Respondent did his best to communicate with the unknown man in Spanish, but was unsuccessful. That man left the scene before anyone could get his contact information. Respondent confirmed his belief that appellant's car struck the car in front of her before respondent's car struck appellant's car. He observed what "look[ed] like a rear ending." He did not however, hear any impact from that first collision that he observed.

After they were off the freeway, respondent parked directly behind appellant's car. After attempting to talk with the non-English speaking man, respondent spoke with appellant. The parties agreed they were each unhurt. They mutually decided not to call the police. They exchanged information. Appellant left before respondent left. Respondent testified he did not want to leave a young lady alone on the street, and he was trying to be a gentleman.

Respondent observed no signs of any pain or injury to appellant, nor did she appear to be in any discomfort. Respondent was likewise uninjured. Respondent's car suffered virtually no damage. He had to bend his license plate into shape and wipe a small scratch from his bumper. There was some damage to appellant's trunk. Respondent was concerned that it would not close properly, and he helped appellant tie it down with some rope that he had in his vehicle.

**Appellant's testimony**

Appellant's testimony contradicted respondent's in certain ways. She testified that at the time of the collision she was on her way to visit her family, traveling on the 110 freeway southbound. She was then 30 years old. Her dog was in the car.

Appellant testified that she was stopped at the time of the collision. She was in the number three lane. She had been stopped for three to five seconds because traffic ahead of her had come to a stop. She had come to a gradual stop. She was struck by respondent's vehicle with a heavy impact. The impact pushed her into the vehicle in front of her.

Appellant stated she could see respondent's car in her rear view mirror and it was apparent to her that respondent would not be able to stop in time to avoid the collision.

3

The first impact was heavy and made her head go back. She was then pushed forward into the third vehicle.

After the collision, appellant observed damage to the rear of her car where there previously had been none. Her trunk would not close and respondent used rope to tie it down. Appellant testified that when they exited the freeway, respondent parked around the corner. She asked him if she could see his car, and he refused. Appellant testified that she called 911, but the police never arrived. Appellant also testified that respondent left the scene before she did, although she was begging him to stay. After about 20 minutes, appellant left the scene, because it was getting dark and she did not want to be downtown alone. She proceeded to join her family at her brother's house.

Appellant testified that on the way to her brother's house she started feeling pain in her neck and back and soreness, radiating into her arms. She stayed at the family gathering only about 30 minutes, then went to her parents' home, took Tylenol and went to bed, hoping that she would feel better in the morning. However, the next morning she felt much worse. She testified that her whole body hurt.

Appellant sought treatment from her primary care physician, who prescribed ibuprofen and suggested she see a different doctor because he did not treat accident cases. Appellant then saw Rajan Patel, M.D. Dr. Patel referred appellant to a neurosurgeon, Carl Lauryssen, M.D. Dr. Lauryssen recommended that appellant have surgery, which was performed on June 6, 2012.

During cross-examination appellant admitted she had been suffering from chronic fatigue, chronic echovirus, and immune dysfunction since 2001. These conditions caused fatigue, dizziness, migraines, seizures, weakness, muscle pain, and tenderness all over the body, including her neck, back, shoulders, elbows, and knees. Prior to the accident, appellant suffered from extreme fatigue and dizziness, and even had blackouts and fainting spells. Appellant conceded that prior to the accident she had consulted a neurologist regarding low back pain. She had also been diagnosed prior to the accident with dyskinesia, and rheumatoid arthritis, which cause joint pain and swelling. Prior to the accident, appellant had also complained of chest pain that radiated to her rib area and

4

her back.  Appellant was prescribed medications for these conditions, including Vicodin, Ultracet, and Naproxen.

Appellant testified that she had not been in an injury producing accident from 2000 through 2010.  However, appellant was confronted with information which indicated she had been in an automobile accident in 2005.  While appellant testified that the 2005 accident was "pretty minor," her prior discovery responses revealed that she had whiplash for which she saw a chiropractor.  Appellant also revealed that in May of 2010, she was hit by a bicycle.

Although she claimed the surgery she underwent two years after the January 16, 2010 automobile accident was a result of the accident, appellant had two long gaps in treatment between the accident and the date of her surgery.  In July 2010, she stopped treatment and did not return for almost a year, when she claimed her symptoms suddenly reappeared.  In July 2010, Dr. Patel told appellant to come back in six weeks, but she did not return until June 2011, when it was recommended that appellant take Motrin and return in four weeks.  However, appellant did not visit the doctor next until April 2012.  During this second gap in treatment, appellant did not see any other doctors or health care providers for injuries she claimed to have suffered as a result of the January 16, 2010 accident.  Appellant's first visit to Dr. Lauryssen was May 8, 2012, which was two and a half years after the accident.  Appellant was also cross-examined with medical records from September and October 2010 which revealed that at that time, she was not complaining of neck or back pain.

**Expert testimony**

Dr. Patel testified as both an expert and the treating physician.  It was Dr. Patel's opinion that appellant was injured in the automobile accident.  Dr. Lauryssen, a board certified neurosurgeon, also testified.  It was Dr. Lauryssen who recommended that appellant have the anterior cervical neck discectomy and fusion, which she did undergo.  In Dr. Lauryssen's opinion, appellant sustained a disc herniation as a result of the accident which necessitated the surgery.  Daniel Powers, M.D., a radiologist, testified that

5

the disc herniation shown on appellant's MRI likely resulted from trauma such as the accident.

Respondent called expert witness, Richard Rhee, M.D., who reviewed appellant's medical records and opined that her surgery was not the result of injuries sustained in the January 2010 accident. Rather, the images showed that appellant suffered from degenerative disc disease, a condition that takes years to form and is not the result of trauma. Dr. Rhee testified that the injuries appellant claimed were caused by the accident could not have resulted from the accident.

Philip Wang testified as an accident reconstruction expert. He opined that the first impact occurred when respondent's vehicle struck appellant's vehicle. Appellant's vehicle was then pushed forward into the third vehicle. Wang opined that the alternative scenario, where appellant's vehicle hit the third vehicle first, was improbable due to the minor amount of damage to the front of appellant's vehicle.

During respondent's cross-examination of Wang, he confirmed that Wang's opinion that the first impact was not between appellant's car and the third car was because there was no "brake diving"[1] by appellant's vehicle. Wang admitted that if appellant did not slam on the breaks or apply the breaks firmly, there would be no brake diving. Wang admitted there could have been a low speed rear-end impact without brake diving.

**Jury verdict**

On November 13, 2013, the jury returned a special verdict in respondent's favor, finding that he was not negligent.

**Posttrial motions**

Appellant filed a motion for partial judgment notwithstanding the verdict (JNOV), arguing that the evidence demonstrated that respondent was negligent as a matter of law, the verdict was not supported by the evidence, and that Wang's testimony was

---

[1]     Wang testified to a "phenomena called break dive," which is when a car engaged in heavy breaking hits the car in front of it while dipping downward.

6

uncontradicted. Appellant also filed a motion for new trial, raising arguments similar to those raised in the JNOV motion.

On January 27, 2014, the trial court issued a minute order denying the motions for new trial and JNOV. The trial court specified that respondent's testimony was sufficient for the jury to conclude that appellant's vehicle made the initial impact with the third vehicle, causing respondent's vehicle to collide with appellant's vehicle. The trial court noted that if the jury disbelieved Wang's testimony and believed respondent's testimony, then it could rationally find that appellant caused the accident. Based on the evidence presented at trial, the court found there was sufficient evidence to support the jury's verdict.

On February 24, 2014, appellant filed a notice of appeal.

## DISCUSSION

### I. Standard of review

Appellant argues on appeal that substantial evidence does not support the verdict. In an appeal challenging the sufficiency of the evidence to support the verdict, the appellate court generally applies a substantial evidence test. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873 (*Bowers*).) Under this standard, we must consider the evidence favorable to the prevailing party and resolve all conflicts in the evidence in favor of the respondent. "We do not reweigh the evidence, but instead determine whether the record contains substantial evidence, contradicted or uncontradicted, to support the judgment. [Citation.]" (*Bunch v. Hoffinger Industries, Inc.* (2004) 123 Cal.App.4th 1278, 1303.) Substantial evidence is evidence "of ponderable legal significance, . . . reasonable in nature, credible, and of solid value. [Citation.]" (*Bowers, supra*, at p. 873, italics omitted.)

In applying the substantial evidence test, we look at the entire record of the appeal, and not limit our review to isolated bits of evidence. (*Bowers, supra*, 150 Cal.App.3d at p. 873.) "The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent based on the *whole* record. [Citation.]" (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 (*Kuhn*).)

7

Where, as here, a plaintiff has failed to carry his or her burden of proof at trial, the question for the reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.) "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' [Citation.]" (*Ibid.*)

## II.  Substantial evidence supports the verdict

The jury made a finding that respondent was not negligent in the automobile accident that occurred on January 16, 2010.  Substantial evidence in the record supports this finding.

Respondent's testimony was that he was "more than a safe distance" behind appellant's car on the freeway.  About a minute after he pulled on the freeway, he observed two sets of brake lights ahead of him in what he believed to be a collision.  He testified that it "look[ed] like a rear ending" to him.  Respondent testified that his SUV sat higher than the two vehicles in front of him, so that he was able to see both vehicles. Respondent slammed on his brakes as soon as he saw the collision in front of him.  He was unable to swerve to avoid colliding with the rear of appellant's vehicle because there were cars in the lanes on either side of him.  He could not stop in time to avoid the collision.

This evidence supports a finding that respondent was not negligent.  Instead, it suggests that appellant was involved in a collision with the car in front of her, and respondent was unable to stop in time to avoid it, even though he was driving safely.

Appellant attempts to pick apart respondent's testimony, arguing that respondent merely testified that it was his "belief" that appellant's car first struck a car in front of her.  Appellant argues that respondent simply presented evidence that he rear-ended appellant's vehicle after seeing a pair of brake lights.  In other words, appellant argues, respondent's defense was based entirely on his assumption that immediately prior to the accident, appellant's vehicle rear-ended a third vehicle in front of her.  Appellant argues

that such speculation does not constitute substantial evidence. (*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 45 ["[a] judgment cannot be based on guesses or conjectures"].)

We disagree with appellant's suggestion that respondent's testimony was conjectural. Respondent's testimony was not based on speculation. Instead, it was based on his observations. When asked whether it was his testimony that appellant struck the vehicle in front of her first, respondent replied, "I believe so, correct." Respondent was then asked, "And your only basis for saying that is you saw two brake lights come together?" Respondent replied: "We're on the 110 going southbound. It's 8:00 at night. It's dark. I see a pair of brake lights on the freeway. And when they're that close, and when it's moderate traffic, people are generally going around 40 or 50 miles per hour around there. And that looks like a rear ending to me. And I see this and I slammed on my brakes."

It is apparent from his testimony that respondent's belief that appellant's car hit the car in front of her first was based on his observations, not speculation. The manner in which the brake lights came together, given the way traffic was moving around him, looked like a rear-ending to him. Respondent was present at the time of the accident, he was able to see the cars in front of him, observe the flow of traffic, and observe a rear-end accident in front of him. On the basis of respondent's testimony, it was reasonable for the jury to conclude that appellant had rear-ended the car in front of her before respondent hit appellant's car. Because the jury accepted this reasonable conclusion, we may not reweigh the evidence nor substitute our judgment for that of the jury. (*Metzger v. Barnes* (1977) 74 Cal.App.3d 6, 9-10.)

Appellant argues that Wang's testimony was uncontested, and that his uncontroverted testimony was that respondent's vehicle struck appellant's vehicle first, before appellant struck the vehicle in front of her. While respondent did not provide a competing expert, this does not mean that Wang's testimony was uncontested. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 636 (*Howard*) ["failure to provide

9

opposing expert witness testimony does not necessarily make the expert testimony which is offered 'uncontradicted'".)

"So long as it does not do so arbitrarily, a jury may entirely reject the testimony of a plaintiff's expert, even where the defendant does not call any opposing expert and the expert testimony is not contradicted. [Citations.]" (*Howard, supra*, 72 Cal.App.4th at p. 633.) Here, respondent's counsel's cross-examination of Wang cast some of his opinions into doubt, including the basis for his conclusion that the first impact was between respondent's car and appellant's car. Wang admitted that although in his opinion, appellant's car did not hit the third car first due to the fact that there was no brake diving by appellant's vehicle; there could, in fact, have been a rear-end collision without such brake diving. Respondent's counsel also pointed out that Wang made certain assumptions about the third vehicle involved which could have been incorrect.

Considering respondent's counsel's cross-examination of Wang, and respondent's direct testimony regarding his personal observations at the time of the accident, the jury was not required to accept Wang's testimony. The jury was entitled to reject such testimony, in whole or in part.

Appellant's evidence was not uncontradicted. Respondent's testimony, based on his own observations, was sufficient evidence supporting a jury verdict in respondent's favor.

**III. An inference of negligence does not compel reversal in this case**

Appellant argues that a rear-end collision such as the one that occurred between appellant and respondent raises an inference that respondent was negligent. (Veh. Code, § 21703 ["The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway"]; see also *Beck v. Kessler* (1965) 235 Cal.App.2d 331, 337 ["there is a permissible inference of negligence from the fact of a

10

rear-end collision requiring some explanation or excuse from the driver of the rear car"].)**2**

However, the inference raised by a rear-end collision may be refuted by the evidence. Just because the defendant has hit the plaintiff's car from behind, "this does not necessarily mean that . . . *only one* conclusion -- that of the rear driver's negligence -- can be drawn from the evidence, since the evidence may be in conflict as to how the collision occurred, or if not in conflict at least susceptible of conflicting inferences." (*Beck v. Kessler, supra*, 235 Cal.App.2d at p. 337.) "The question of whether the driver in the rear was negligent in colliding with the car in front is essentially a question of fact and not of law because it is dependent upon the circumstances of the individual case. [Citation.]" (*Kramer v. Barnes* (1963) 212 Cal.App.2d 440, 447.)

Thus, even in rear-end collision cases, the trier of fact may reasonably find that the rear driver was not negligent. (See, e.g., *Aivazi v. Marcano* (1960) 180 Cal.App.2d 792, 793-795 [evidence sufficient to support a verdict of no negligence where defendant hit plaintiff from behind and admitted he was too close to the plaintiff's vehicle]; *Karageozian v. Bost* (1956) 139 Cal.App.2d 874, 878 [jury verdict for defense affirmed in rear-end collision case because jury could determine whether defendants were driving in a careful and prudent manner and accident could have occurred because of negligence of plaintiff's husband]; *Lowenthal v. Mortimer* (1954) 125 Cal.App.2d 636, 638 [in action for damages when front of defendant's automobile struck rear of plaintiff's automobile, the evidence supported the jury verdict for the defendant].) As set forth above, the jury could reasonably have found that any inference of negligence that arose

---

**2** Appellant also argues that the doctrine of res ipsa loquitor applies. (See *Pacific Greyhound Lines v. Querner* (1960) 187 Cal.App.2d 190, 193 (*Pacific*) ["a collision between a moving automobile and . . . one momentarily at a standstill, calls for the application of the doctrine of res ipsa loquitor"].) However, application of the doctrine of res ipsa loquitor merely provides the same inference of negligence discussed in the case law. (See, e.g., *Beck v. Kessler, supra*, 235 Cal.App.2d at p. 337 ["where the rear car has collided with a stopped or stationary vehicle, the courts have applied the doctrine of res ipsa loquitor and have held that an inference arises that the collision was caused by some negligent conduct on the part of the driver of the rear car"].)

11

from the rear-end collision was rebutted by respondent's testimony, which was based on his observations and constituted substantial evidence.

Appellant cites two cases which, appellant argues, support the conclusion that respondent failed to provide sufficient evidence to offset the inference of negligence. The first is *Malkasian v. Irwin* (1964) 61 Cal.2d 738 (*Malkasian*). In *Malkasian*, plaintiff's decedent was killed when he collided with a truck parked adjacent to the highway. There was conflicting evidence as to whether plaintiff's decedent was first struck from behind by defendant's vehicle, thus pushing the decedent's vehicle into the truck, or whether the decedent first hit the truck, then was struck from behind by the defendant's vehicle. The jury brought in a defense verdict, and the plaintiff moved for a new trial, which the trial court granted, indicating that the court felt almost compelled to direct a verdict for the plaintiff based on the evidence. (*Id.* at p. 743.) However, the order issued by the court failed to specify insufficiency of the evidence as the court's reason for granting the motion. The defendant appealed, arguing that the new trial motion could not have been granted on any of the grounds specified therein. The ruling was affirmed. However, the appellate court noted, "Certainly, if the trial court had denied the motion, we would not disturb the ruling." (*Id.* at p. 748.)

This quote highlights the difference between *Malkasian* and the case before us. In *Malkasian*, the trial judge, having sat through the evidence, felt that the verdict was "'a miscarriage of justice.'" (*Malkasian, supra*, 61 Cal.2d at p. 743.) Here the trial court, having sat through the trial, concluded the jury verdict was supported by the evidence. We cannot disturb the trial court's ruling unless no reasonable trier of fact could have found for the respondent based on the whole record. (*Kuhn, supra*, 22 Cal.App.4th at p. 1633.)

The second case cited by appellant is *Pacific*. In *Pacific*, the plaintiff's bus was traveling on the highway between 25 and 30 miles per hour. When a car pulled on to the highway in front of the bus, the bus decelerated in order to allow the car to accelerate ahead of it. At that point, defendants' truck and semi-trailer struck the back of the bus. (*Pacific, supra*, 187 Cal.App.2d at p. 192.) The court gave judgment for defendants, and

the plaintiff appealed. The Court of Appeal indicated that the facts gave rise to an inference of negligence on the part of the defendant. (*Id.* at p. 192.) Thus, defendants were required to produce evidence explaining the occurrence of the accident. However, "no such evidence or explanation appear[ed] in the record." Defendants' evidence showed that the driver of the truck showed "negligent inattention, and . . . a failure to keep his machine under control and failure to act promptly to avert the collision." (*Id.* at pp. 193-194.)

This case is distinguishable from the matter before us. Here, respondent did provide evidence to rebut an inference that he was negligent. He testified that it was appellant who first collided with the car in front of her. Despite being a safe distance from appellant's car, and doing everything he could to stop, he could not stop in time to avoid hitting the rear of appellant's car. In contrast to the defendant in *Pacific*, respondent's evidence was sufficient to rebut any inference of negligence that arose.

Because sufficient evidence supports the verdict, we decline to disturb the trial court's ruling.

## DISPOSITION

The judgment is affirmed. Respondent is awarded his costs of appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                                CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST

13