Filed 7/21/22  Walker v. Nguyen CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BERT WALKER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>VINH NGUYEN,<br><br>    Defendant and Respondent. | H047851<br>(Santa Clara County<br>Super. Ct. No. CV323420) |

Plaintiff Bert Walker was rear-ended by defendant Vinh Nguyen in a low-speed collision.  After Nguyen conceded liability, the parties proceeded to a jury trial on the questions of causation and damages.  The jury found in Nguyen's favor, awarding $0.00 in damages to Walker.  The trial court subsequently denied Walker's motion for a new trial.

On appeal, Walker argues the trial court erred in denying her motion for a new trial on the grounds of attorney misconduct and juror misconduct.

For the reasons explained below, we disagree and will affirm the judgment.

I.　**FACTUAL AND PROCEDURAL BACKGROUND**[1]

*A*. *Trial evidence*

　　1. *Walker's testimony*

On Friday, March 4, 2016, Walker was in her vehicle, wearing her seat belt, and stopped in the left lane at a traffic light on Brokaw Road in San Jose.  It had been

---

[1] Our summary of the facts is taken from the reporter's transcript and the portions of the written record contained in the clerk's transcript.

"raining hard" that day. Walker suddenly felt a "hard jolt" to the back of her car and she was "jolted forward." The man who collided with her, Nguyen, came up to her window and asked if she was all right. Walker replied " 'Well, I don't know. . . . I'm really shook up.' " Walker and Nguyen pulled their cars over to the side of the road, and Walker inspected her vehicle noticing that there was "damage to [her] bumper and [her] side panel where the gas cap is." She was able to drive away from the scene of the accident.

Walker, who was on her lunch break at the time of the accident, returned to work for the rest of the day. She did not feel any pain until "Saturday evening" or Sunday. Walker contacted her primary care physician and made the first available appointment for the following "Tuesday or Wednesday." At the appointment, she said she "had a lot of shoulder and neck pain." Her doctor prescribed pain medications and advised her to seek "other treatment" if that did not work. Walker's doctor did not take any X-rays or have Walker undergo an MRI.

On cross-examination, Walker admitted she did not have any bruising on her body from the seat belt, nor did any part of her body impact anything in the car's interior, such as the steering wheel or windshield. The collision did not break any glass on her vehicle. Walker also denied telling Nguyen at the scene of the accident that she had been in an automobile accident a few weeks prior.

Walker began to see a chiropractor in May 2016 when the pain had not gone away. She underwent chiropractic treatment for about six months and "felt good" after each treatment, but the pain "kept coming back." The pain was in her neck and shoulder, but eventually it was her "shoulder that would bother" her.

After that, Walker sought treatment with a pain management specialist who initially gave her an MRI. The specialist reviewed the MRI with Walker and told her she had "disc bulges" in her neck and advised her to treat her pain with acupuncture.

2

When the acupuncture was not effective, the specialist recommended a series of steroid injections. Walker had to be anesthetized for these injections into her neck.

The injections provided complete relief for about six weeks, during which Walker was able to resume going to the gym regularly and performing other day-to-day activities. After that, the pain returned and Walker received another steroid injection. The effect of the second shot lasted a week or two longer than the first.

Walker then returned to her primary care doctor, who prescribed physical therapy, and she also met with another physician at the pain management clinic. The pain clinic physician referred Walker for a surgical consultation but the surgeon determined she was not a good candidate.

At trial, Walker testified she had consistent pain in her neck and shoulder and denied having any such pain before the accident. The pain was interfering with her sleep and was causing her to not be as physically active. However, Walker was still able to work since the accident and was not making a claim for lost wages.

Walker admitted she had previously received treatment for neck pain from a car accident in 2010, but said her injuries from that accident had completely resolved before the 2016 accident. On cross-examination, Walker testified her primary care physician ordered cervical radiographs in 2012 due to neck pain.

With respect to the damage to her vehicle, Walker testified that her car had been vandalized before the accident, but she denied that she had ever previously been in an accident. Her car was in the repair shop for "about six week[s]" and the repairs cost more than $3,500.

### 2. *Nguyen's testimony*

Nguyen testified that he was driving on Brokaw Road in San Jose on March 4, 2016, and stopped at a traffic light, approximately two to three feet behind Walker's vehicle. The sky was overcast and the roads were slightly wet. Nguyen saw the light

3

change "up ahead," and noticed other cars moving, so he "eased up on the brake."[2] Nguyen hit Walker's rear bumper and immediately "hit the brakes" again.

Nguyen got out of his car and went over to Walker's vehicle to ask if she was "okay." Walker told him she was "okay"[3] but could not restart her vehicle to move it to the shoulder. Nguyen pointed out that she had not put the car in "park" before turning off the ignition and once Walker did so, her car started. Nguyen testified that Walker was "really frustrated" and told him "two weeks prior she had been involved in an accident and she had just gotten her car out of the shop."

Nguyen testified that the only damage to his vehicle was a bent license plate and the only damages he saw on Walker's vehicle were some "minor scuffs and scratches from where [his] license plate" contacted her rear center bumper.

### 3. *Walker's treatment providers*

Dr. Larry Payne testified that he began seeing Walker following her automobile accident and he treated her, on a lien basis, from May 2016 to September 2016.[4] Walker complained of "consistent pain to the neck and shoulder" and Dr. Payne testified her complaints were "[c]onsistent and typical of an automobile accident." While his treatment helped Walker, her symptoms would flare up when she increased her exercise activity. Dr. Payne stopped treating Walker in September 2016 because she had reached a "plateau" in her recovery, at which point he recommended she continue with stretching and normal activities in the expectation her symptoms would "heal and resolve on their own." Dr. Payne's bills reflecting Walker's treatment were entered into evidence.

---

[2] It was not clear from Nguyen's testimony whether it was the light at the intersection where he and Walker were waiting which had turned green or whether it was a light further along which Nguyen mistook for the nearer traffic signal.

[3] Nguyen could not recall the exact words Walker used in response to his question.

[4] Dr. Payne previously treated Walker in 2014 for lower back pain.

Salina Dhiman, the personal injury case manager for the pain management clinic, verified the billing for Walker's treatment. Walker's bills totaled $10,089 and none had yet been paid. Dhiman confirmed that Walker was treated on a lien basis.

Walker also presented the testimony of Dr. Parish Vaidya, the physician at the pain management clinic who treated her, via previously recorded video deposition.[5] For logistical reasons, defense counsel's cross-examination of Dr. Vaidya was read into the record. In response to those questions, Dr. Vaidya testified that Walker's prior medical records indicated that she suffered from myalgia (muscle pain) and arthralgia (joint pain) since 2012, that she had a cervical spine X-ray in 2012, and that she had a history of depression. Dr. Vaidya admitted that he did not consult with any of Walker's primary care physicians during his treatment of her.

### 4. Defense experts

Daniel Trudell testified as an expert in traffic investigation and accident reconstruction. Although Trudell did not inspect either vehicle involved in the accident, he reviewed Walker's repair estimate, photographs, and deposition transcripts to calculate the physical forces involved in the collision. Based on the materials he reviewed and assuming that all of the damage to Walker's vehicle was the result of this collision, Trudell calculated that if Nguyen's vehicle was traveling at 6 miles per hour (mph) at the time of the collision, Walker's vehicle would go from 0 mph to 3.9 mph, causing an acceleration force of 1.4 Gs. Trudell testified this acceleration force is equivalent to bumping the curb while parallel parking or hitting the concrete stop in a parking space. However, based on Nguyen's deposition testimony that the only damage to his vehicle was a bent license plate, Trudell calculated that his vehicle was more likely traveling between 3 mph and 5 mph. A collision at those speeds would have caused Walker's

---

[5] Excerpts of Dr. Vaidya's deposition were played for the jury but not all of those excerpts were recorded by the court reporter. Instead, transcripts of the excerpted portions were provided to the jury and included in the record on appeal.

vehicle to accelerate to 1.9 mph, resulting in a force of 0.75 Gs. Trudell also calculated the forces involved in the event that Nguyen was traveling at 8 mph, which would have caused Walker's vehicle to accelerate to 5 mph and generated 2.01 Gs in force.

Dr. Floyd Fortuin testified as an expert witness in neurology and "forensic medical-legal evaluation." In preparation for trial, Fortuin reviewed Walker's medical records, deposition testimony, photographs, and repair estimates. Fortuin also examined Walker in person, and that examination was audio recorded by a nurse retained by Walker's counsel.

Fortuin opined that Walker likely suffered—at most—mild neck and shoulder strain in the accident, based on her primary care physician's notes indicating Walker's range of motion was normal, she "had no spasm," and there was no basis for taking X-rays. Based on Nguyen's description of the accident and the photographs of the vehicle damage, Fortuin believed it was also possible Walker was not injured at all in the collision. The types of "trivial" impacts and associated energy people experience in everyday life are similar to those generated in the accident, and would only cause nontrivial injury to someone who was physically frail or had some preexisting condition. According to Fortuin, Walker did not fall into either of these categories and was "of sound body."

Regarding Walker's chiropractic treatment, Fortuin opined that this was entirely unrelated to the accident because it took place more than three months later and she reported "widespread symptoms totally different" than what she reported to her primary care doctor. Fortuin testified that Walker was suffering significant depression at the time and that this was the underlying cause of her pain. Fortuin concluded that Walker's complaints of ongoing pain were not related to the collision.

As to the bulging discs shown in Walker's MRI, Fortuin opined that these were also not related to the accident, expressly disagreeing with Walker's pain management doctor, Vaidya. Fortuin testified that the MRI showed degenerative, rather than acute,

6

injuries. If Walker's discs were injured in the collision, she would not have had a normal range of motion or lack of spasming when she saw her primary care physician five days later. Instead, the bulging discs and arthritis in the MRI was typical for someone of Walker's age of 57. In Fortuin's opinion, Walker's treatment at the pain management clinic was also unrelated to the accident. On cross-examination, Fortuin admitted that an asymptomatic degenerative condition can become symptomatic due to acute trauma, such as a car accident, but disagreed that this occurred in Walker's case.

### B. *Jury verdict*, *posttrial proceedings*, *and entry of judgment*

The jury unanimously awarded Walker $0.00 in damages.

Walker moved for a judgment notwithstanding the verdict (JNOV) and for a new trial based on alleged irregularity in the proceedings of the jury, irregularity in the proceedings caused by defense counsel, jury misconduct, defense counsel misconduct, accident or surprise, inadequate damages, insufficient evidence to support the verdict, and that the verdict is contrary to the law. In her briefing, Walker claimed she was entitled to JNOV or a new trial because defense counsel engaged in misconduct by repeatedly failing to exclude references to "Kaiser" in violation of the court's in limine ruling, and this misconduct warranted judgment notwithstanding the verdict or a new trial. She further argued that an award of $0.00 damages was contrary to the preponderance of the evidence, was based upon insufficient evidence, and that the jury disregarded the court's instructions. The trial court denied both motions.

The court entered judgment in Nguyen's favor and awarded him costs totaling $25,293.12.

Walker timely appealed.

## II.   DISCUSSION

### A. *Standard of review and legal principles*

"The grounds upon which a new trial may be granted are statutory. [Citation.] Code of Civil Procedure section 657 lists seven such grounds. Included within that list is

'[i]rregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.' " (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 46 (*Ajaxo*).) "[M]isconduct of counsel is such an irregularity and a ground for new trial." (*Los Angeles v. Decker* (1977) 18 Cal.3d 860, 870.) Similarly, jury misconduct which materially affects the substantial rights of a party is also a basis for granting a new trial. (*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 320-321.)

In reviewing an order denying a motion for new trial, the California Supreme Court has made clear that we " 'must fulfill our obligation of reviewing the entire record, including the evidence, so as to make an independent determination as to whether the error was prejudicial. [Citations.]' (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872.)" (*Ajaxo*, *supra*, 135 Cal.App.4th at pp. 46-47.)

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "Failure to provide an adequate record on an issue requires that the issue be resolved against plaintiff." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

### B. *Attorney misconduct*

Walker argues the trial court erred in denying her motion for a new trial because defense counsel repeatedly violated an in limine order precluding reference to "Kaiser" thus improperly influencing the jury to consider Walker's health insurance as a collateral source of recovery. Nguyen contends that Walker has forfeited this claim by failing to object and, alternatively, cannot show prejudice. We agree that Walker's failure to timely object amounts to forfeiture, but even if we were to consider the substance of this argument, it is without merit.

8

### 1. *Relevant background*

Prior to trial, Walker brought a motion in limine to "exclude evidence that [Walker] was insured by Kaiser at any point after the crash and to preclude mention of Kaiser." Walker's counsel explained that because Kaiser was "synonymous with insurance" any mention of the name would improperly plant the notion of insurance coverage in the jurors' minds. The court deferred ruling on the motion, as the parties indicated they would meet and confer on the issue. Ultimately, the parties agreed that instead of Kaiser, the attorneys and witnesses would substitute the terms "primary care," "primary health care," or "primary care physicians."

Before Walker called her first witness, defense counsel informed the court that there was a "logistical issue" with Vaidya's videotaped deposition. That deposition was taken well before Walker's in limine motion and Vaidya "makes references probably eight or nine times to the word 'Kaiser.' "[6] The trial court suggested that, because defense counsel lacked the ability to edit the video, defense counsel stop the recording at those points and read Vaidya's testimony substituting "primary care physician" for "Kaiser." Defense counsel objected that this was burdensome especially since the jury would be instructed that "Kaiser is a doctor, it has nothing to do with insurance." The trial court overruled the objection but indicated it would instruct the jury that this procedure was due to a legal ruling by the court.

After two of Walker's witnesses used the word "insurance" during their testimony, defense counsel asked that the court revisit its previous ruling on the motion in limine arguing that these witnesses had essentially opened the door. The trial court denied the request, finding that none of the witnesses referred to "Kaiser" expressly and that the

---

[6] Because Walker failed to include the transcript of Vaidya's cross-examination by Nguyen's counsel, we cannot independently confirm how many times Vaidya or counsel uttered the word "Kaiser."

defense should adhere to "the agreement that [it] made in the beginning . . . to refer to it as 'primary care.' "

The following day, portions of Vaidya's videotaped deposition were played in court for the jury and defense counsel provided copies of the transcript of his cross-examination, with references to "Kaiser" redacted. The court instructed the jury that "certain redactions . . . have been made" in the transcript, that "defense counsel is going to read that question into the record where there's a [redaction]," and the jury should not concern itself as to why.

During the playback, Walker's counsel requested a sidebar due to a concern that some of the redactions were not opaque. The transcripts were collected from the jurors and, during a recess, the parties used black markers to ensure that the jury could not make out what had been redacted. Before calling the jury back in, the trial court stated that "[b]oth sides have checked the copies [of the transcript] . . . [and] [they're] satisfied that the strike-outs are dark enough now that they can proceed." When the jury returned, the court instructed the jurors to "disregard any deleted portions of the recording or transcription" and not to "speculate as to why there are deletions."

Due to some difficulty in synchronizing the video playback with the written transcript, the court directed defense counsel to simply read the transcript. Defense counsel accordingly read the relevant portions of the transcript substituting "primary care provider" or "primary care doctors" for Kaiser. Video playback resumed after the portion of the cross-examination during which Vaidya referenced Kaiser. At one point, however, defense counsel stated, "I should probably redact the next line . . . [i]n light of your ruling," but plaintiff's counsel said "It's okay." After the video played again for an unspecified period of time, the court asked, "Is there a redaction here?" and defense counsel responded, "Well, it's not a bad word." Following a sidebar, the court indicated that the video playback could continue because "[p]laintiff's counsel said it's okay."

10

During presentation of Nguyen's case, defense counsel was examining Fortuin about Walker's medical history and said, "Her Kaiser—excuse me, her primary care records referenced myalgia in 2012 and arthralgia in 2012. [¶] What does that mean?" Walker's counsel did not object or move to strike. On cross-examination, Fortuin was asked about his opinion that Walker's "pain in her neck and shoulder" was "more associated with the [depression] and anxiety." Fortuin responded as follows: "Correct. After the accident. What's more likely? Was it the accident or some other factor to give her pain at Kaiser? And so the differential is, yes, it could be a mild strain pain or it could be myalgia for which theirs [*sic*] is a prior diagnosis." Again, Walker's counsel did not object or move to strike.

### 2. *Applicable law*

"In order to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court." (*In re S.C.* (2006) 138 Cal.App.4th 396, 406.) " '[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.' " (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 866 (*Lopez*).) " 'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.' " (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949.)

In evaluating whether claimed attorney misconduct is prejudicial, courts should examine the following four *Sabella* factors: "(1) the nature and seriousness of the misconduct; (2) the general atmosphere, including the judge's control of the trial; (3) the likelihood of actual prejudice on the jury; and (4) the efficacy of objections or admonitions under all the circumstances." (*Martinez v. Department of Transportation* (2015) 238 Cal.App.4th 559, 568, citing *Sabella v. Southern Pac. Co.* (1969) 70 Cal.2d 311, 320-321.)

### 3. *Analysis*

Based on the record, we can identify only two instances, one by Nguyen's counsel and one by Fortuin, when the word "Kaiser" was uttered in violation of the in limine order.[7] Walker's counsel did not object either time and we consider the claim forfeited. (*Lopez*, *supra*, 12 Cal.5th at p. 866.)

Even if we assume that Walker did not forfeit this argument, we find it has no merit. None of the *Sabella* factors weigh in favor of Walker. The references to Kaiser by Nguyen's counsel and Fortuin were fleeting and isolated. The atmosphere at trial was, as best we can discern from the record, professional and collegial and there is no indication that the trial judge was not in control of the proceedings. The likelihood that the jury, which Walker admits had been specifically instructed not to consider insurance, was prejudiced by two brief mentions of "Kaiser" is exceedingly low. Lastly, Walker makes no attempt to explain why a prompt objection, followed by a motion to strike and/or an admonition from the trial judge, would have been ineffective.

As a result, we conclude the trial court did not err by denying Walker's motion for new trial on the ground of attorney misconduct.

### C. *Insufficient evidence and jury misconduct*[8]

Walker next claims that the jury's verdict was not supported by the evidence, demonstrating that it improperly considered insurance as a factor when making its final determination, and also that it failed to follow the court's instructions on substantial

---

[7] Walker also states that Nguyen's counsel violated the in limine order by "poorly" redacting or failing to redact references to Kaiser or insurance from the transcript of Vaidya's testimony that was provided to the jury. However, the transcript that was originally passed out to the jury is not in the record, nor did counsel describe in detail during trial the specific problems with that transcript, e.g., "Here on page X, at line Y, there is a reference to Kaiser that is not redacted." The claim is not supported by the record and we will not consider it. (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.)

[8] Walker's briefing interweaves these two concepts so we discuss them together rather than in separate sections.

factor and causation.  Nguyen argues that Walker has failed to cite all material evidence in her briefing and has waived this claim.  Alternatively, he argues that Walker cannot show the trial court erred in denying the motion for new trial on this ground.  We agree that Walker has waived this issue by failing to cite all material evidence supporting the verdict, but even if she had not, we conclude that Walker's argument is without merit.

### 1. *Relevant background*

At the close of evidence, a juror submitted the following question:  "Defendant mentioned that the plaintiff took photos of the accident.  Does her insurance have copies of the photos?"  The court and counsel then finalized the instructions to be read to the jury, and in the course of that discussion, the court asked if either party wished to reopen their case in light of the juror's question.  Both sides declined.

The jury instructions were (mostly)[9] not transcribed nor were copies of the instructions included in the record on appeal.

### 2. *Applicable law*

To prevail on a claim the verdict is not supported by sufficient evidence, an appellant must " 'demonstrate that there is *no* substantial evidence to support the challenged findings.'  (Italics added.)  [Citations.]  A recitation of only [appellant's] evidence is not the 'demonstration' contemplated under the above rule."  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)  Where an appellant fails " 'to set forth in their brief *all* the material evidence on the point *and not merely their own evidence*[,] . . . the error is deemed to be waived.' "  (*Ibid*.)

"In ruling on a request for a new trial based on jury misconduct, the trial court must undertake a three-step inquiry.  [Citation.]  First, it must determine whether the

---

[9] Although the initial reading of jury instructions was not transcribed, before counsel presented their final arguments, the trial court noted that it would read "two additional instructions that were left out of the packet."  The trial court then proceeded to instruct the jury on "substantial factor" and the procedure by which the jury could request readbacks of trial testimony.

affidavits supporting the motion are admissible. [Citation.] If the evidence is admissible, the trial court must determine whether the facts establish misconduct. [Citation.] Lastly, assuming misconduct, the trial court must determine whether the misconduct was prejudicial." (*People v. Dorsey* (1995) 34 Cal.App.4th 694, 703-704.)

### 3. *Analysis*

Walker's recitation of the material evidence supporting the verdict is deficient. Although her opening brief discusses Fortuin's opinion that her injuries were "not to the extent she was claiming," she wholly omits any citation to Trudell's (and Fortuin's) testimony indicating that the force of the collision could not have caused the injuries she described at trial. While Fortuin conceded that Walker may have sustained some injury in the collision, Walker's recitation overlooks his testimony that those injuries were minimal and fully resolved prior to her seeking treatment from Payne and Vaidya. Accordingly, we conclude that Walker has waived her claim that the verdict is not supported by sufficient evidence.

Assuming arguendo that Walker has not waived this contention, it has no merit. As discussed above, Fortuin opined that, although Walker may have suffered some minor injury in the collision, those injuries were fully resolved and her subsequent medical treatments were unrelated to the accident. Trudell testified that Nguyen's vehicle was likely traveling between 3 mph and 5 mph when it collided with Walker's, which would have resulted in an acceleration force less than bumping the curb while parallel parking or hitting the concrete stop in a parking space. This was sufficient evidence for the jury to conclude that Walker's medical bills were for injuries other than those she sustained in the accident.

Further, Walker's contention that the jury engaged in misconduct is also not supported. The claim appears to be based on the alleged attorney misconduct described above, as well as the juror's note asking whether Walker's "insurance" had copies of

14

"photos" Walker took "of the accident." We are not persuaded by either of these examples.

First, we have already disposed of the claim that there was attorney misconduct, let alone misconduct sufficient to prejudice Walker. Second, the note itself is not clear on its face. Since Walker testified that she took photos of her vehicle at the accident but was uncertain what happened to those photos, the juror could be inquiring whether Walker's vehicle insurer might have copies. One of Walker's own witnesses, Dr. Payne, even mentioned Walker's "third-party insurance company" by name (Mercury) during his testimony. Regardless, it is beyond speculative to conclude that the note is a reference to health insurance. Even assuming that the note suggests that the jury was disregarding the trial court's express instructions not to consider insurance, Walker had every opportunity to reopen her case, or request that the court reinstruct the jury in response. Instead, she expressly declined to do so.

Finally, Walker's contention that the jury failed to follow the court's instruction on substantial factor and causation seems to be based entirely on her supposition that the evidence below could *only* support a verdict in her favor. As discussed above, however, there was sufficient evidence in Fortuin's and Trudell's testimony to sustain the jury's finding that she was entitled to zero damages. In addition, this claim of jury misconduct is not supported in any way, such as with juror affidavits or juror notes reflecting confusion or misunderstanding on these instructions. (*People v. Dorsey*, *supra*, 34 Cal.App.4th at pp. 703-704.)

Consequently, we find that the trial court did not err in denying the motion for new trial on the ground of insufficient evidence or jury misconduct.

## III.    DISPOSITION

The judgment is affirmed. Nguyen shall recover his costs on appeal.

15

_____
                                        Wilson, J.

WE CONCUR:

_____
             Bamattre-Manoukian, Acting P.J.

_____
                                    Danner, J.

Walker v. Nguyen
H047851